ALPHEUS D. SMITH *v.* JOHN J. WHITBECK, IMPLEADED WITH HORATIO N. WHITBECK.

1. In order to show a forfeiture of an unexpired term of a leasehold estate, for nonpayment of rent, the lessor must prove demand of payment of the lessee when due.

2. The demand must appear to have been for the precise rent due ; and to have been made, when no place is named for payment, at the most public or notorious place upon the premises ; if a dwelling house be on the lands, at the front door thereof.

3. The demand should be made on the day the rent falls due ; "at a convenient time before sunset ;" by which is meant, immediately preceding sunset, and for a sufficient space of time for counting and paying the money before sunset.

ERROR to the district of Lorain county.

In December, 1859, Alpheus D. Smith filed a complaint, before a justice of the peace in Lorain county, against John J. Whitbeck and Horatio N. Whitbeck, for the unlawful and forcible entry and detention of a tavern stand, at Grafton station, in that county.

Summons was served on John J. Whitbeck, but was returned "not found" as to Horatio N. Whitbeck.

January 24, 1860, the cause was tried before the justice, to a jury ; and the plaintiff, Smith, to maintain the issue on his part, offered in evidence a lease between himself and Horatio N. Whitbeck, made April 15, 1859. The material parts of the lease read as follows :

"The said Horatio N. Whitbeck, in consideration of the

stipulations and agreements hereinafter mentioned, does agree and does hereby let and rent to the said A. D. Smith, for the term of three years from this date, the tavern stand commonly known as the National Hotel, at Grafton station, Lorain county, Ohio, lately occupied by John J. Whitbeck, together with all the household furniture, etc., * * * * together with the barns and outbuildings, and all the appurtenances of the said tavern stand.

" The said Horatio N. Whitbeck hereby agrees to make all needful and necessary repairs upon the house, etc. ; put the house in good repair and condition ; and all the wells and cisterns, and every part of the premises to be in good repair. These repairs to be done in one month from the date hereof. Also, to inclose, by suitable fence, a portion of the land now lying at commons between the house and railroad.

" And the said A. D. Smith, in consideration of the strict performance of the conditions foregoing, does hereby agree to pay the said H. N. Whitbeck the yearly rent of four hundred dollars, to be paid quarterly, in advance, subject, however, to this condition : Should the said Whitbeck sell the said premises before the expiration of this lease, the said Smith agrees to give up possession of the said premises at the end of any one of the three years, upon receiving from the said Whitbeck three months' previous notice, in writing, of such sale.

" The said Smith further agrees to keep the said house in a proper manner, and to take proper care of the premises and appurtenances ; and, at the expiration of this lease, surrender up to the said Whitbeck or assigns peaceable possession of the said premises, in as good condition as they shall be put in by said Whitbeck, the ordinary wear and decay and casualties excepted, etc.

" The said Smith is not to underlet or rent the premises to any other person, without first obtaining the written consent of the said H. N. Whitbeck to such underletting.

" And it is hereby further understood and agreed between the parties, that if, after the performance of the stipulations and agreements of the said Whitbeck, the said Smith shall

fail to pay the rent as the same becomes due, the lease shall thereby be closed and terminated; and the said Whitbeck shall have full power and authority to re-enter and take possession of the premises."

The plaintiff, Smith, offered evidence to show, also, that he took possession of the premises, under the lease, on the day of its date, and continued in possession until the 30th November, 1859, when he was turned out of the premises by the defendants and one McConnell, a constable; and that ever since that time the defendant, John J. Whitbeck, who claimed to act as agent for Horatio N. Whitbeck, had been in possession of the premises. Both the plaintiff and said John J. claiming under Horatio N. Whitbeck.

The plaintiff's evidence tended to show, also, that John J. Whitbeck was the agent of Horatio N. Whitbeck, in respect to the premises, and neither of them, nor any person for them, had made any repairs upon the premises while the plaintiff occupied them, nor after the execution of the lease, and that the premises were out of repair when the lease was executed, and from that time until the plaintiff was ejected; and that the fence mentioned in the lease had not been built until after the plaintiff was ejected; and that the lease had never been canceled or put an end to by the parties.

The defendant, John J. Whitbeck, offered evidence, tending to show that there was a waiver by the plaintiff of the making of the repairs specified in the lease, which waiver was not for any definite length of time. The evidence also tended to show that the defendant, Horatio N. Whitbeck refused to be bound by the waiver, or to continue it after the 1st of August, 1859.

The evidence respecting the waiver was to this effect: that the consideration for the waiver by the plaintiff of the making of the repairs, was that, when he took possession of the premises, on April 15, 1859, the defendant loaned the plaintiff some money, and took his note therefor, and that the use of the money was to go against the repairs, by agreement of the parties, until the plaintiff repaid the money; that, about the 1st of August, the defendant said to the

plaintiff that he would not let the matter remain that way any longer, but wished the money wherewith to make the repairs. The plaintiff made no reply to this, but neglected to pay the money until after October 15, 1859. After that date, the defendant sold the note, which was then overdue.

There was also evidence, tending to show that the defendant had demanded of the plaintiff the rent due July 15, 1859, about one o'clock P. M. of that day. But there was no proof of any demand at any other time upon that day. Nor was there any evidence that the defendant had ever notified the plaintiff that the lease should be held forfeited for nonpayment of rent.

As to the rent due October 15, 1859, the evidence tended to show that it was demanded, on that day, in the afternoon, about four o'clock, upon the premises, and that the plaintiff refused to pay it. But there was no evidence offered to show that the defendant had ever notified the plaintiff that the lease should be held as forfeited for nonpayment of rent.

Thereupon the plaintiff requested the justice of the peace to instruct the jury:

"1st. That to enforce a forfeiture for nonpayment of rent, it is necessary for the lessor to demand the precise sum due on the lease immediately before sundown on the day it is due; and that a demand two or three hours before sundown or after sundown would not be sufficient.

"2d. That before the lessor could enforce a forfeiture of the lease in this case for nonpayment of rent, he must show that he has literally complied with the terms of the contract himself, and bring himself within the strict letter of the lease.

"3d. That a demand made on the 15th day of July, 1859, at one o'clock, P. M., of the rent due that day, would not be such a compliance with the law, and demand, as the law requires; that such time would not be 'a convenient time before sunset.'

"4th. That proof of a demand of rent in the afternoon, merely, would be insufficient to authorize or constitute a forfeiture.

"5th. That, to constitute a sufficient demand, in such

cases, the demand must be made just before sunset, late in the afternoon.

" 6th. That, to constitute a forfeiture for nonpayment of rent, the precise sum due must be demanded before sunset, late in the afternoon, upon the premises; and if not paid, the lessor, or his agent, must declare the lease forfeited for nonpayment of rent.

" 7th. That such an agreement of extension must be upon some good consideration; and that if the jury find that the only consideration was the extension of a note which was drawing interest, and was not intended to cut off the interest upon the note, that such a consideration would not be a good consideration.

" 8th. If the jury find, from the evidence, that there was an agreement to extend the time of the performance of the stipulations and agreements to be performed by the lessor, or any part thereof, such an agreement would not of itself dispense with the performance of such stipulations and agreements, at some time, by the lessor, before he could forfeit the lease, or put an end to the lease for nonpayment of rent."

The plaintiff requested the justice to give each and all of the foregoing propositions to the jury as the law. The justice refused so to do.

As to the second proposition, the justice gave it in charge to the jury, as requested, " with the qualification, that if it appeared in evidence that there was a waiver or extension of time as to making the repairs named in the lease, on the part of the plaintiff, by a new parol contract between the parties to the lease, upon a legal consideration, or upon a contract which has been so far executed or acted upon by the parties to the lease, as that it can not be abandoned without operating as a fraud upon one of the parties, it would be a compliance with the lease so far as the waiver or new contract extended. And if such waiver or new contract extended to the time of forfeiture, the lessor might forfeit the lease for nonpayment of rent, notwithstanding he had not made the repairs at the time of the attempted forfeiture."

And, as to the eighth proposition, the justice charged as requested, except the words, "before he could forfeit the lease, or put an end to the lease for nonpayment of rent"— which words the justice refused to charge.

As to the duties of the lessor in forfeiting a lease for nonpayment of rent, the justice instructed the jury as follows: "It is a settled rule of the common law, that when a right of re-entry is claimed on the ground of nonpayment of rent, there must be proof of a demand of the precise sum due, at a convenient time before sunset, on the day when the rent is due, upon the land, in the most notorious place on it, even though there be no person on the land to pay."

The plaintiff requested the justice to explain to the jury what was a convenient time, within the meaning of the law; which the justice refused to do; but instructed the jury, "that it was a fact for the jury to determine what was or what was not a convenient time for making such demand under the circumstances of each particular case. If the jury shall find that the demand for rent in October was made by the lessor in person, at a notorious place upon the premises, convenient to an entrance to the house upon the premises, at a proper time in the day, and the defendant making no objection as to place, such demand would be good: and it is not necessary to make such demand at the front door of the dwelling-house."

To the refusal to charge as requested, and to the charge as given, the plaintiff excepted.

The jury found for the defendant, and judgment was entered accordingly.

To reverse this judgment, the plaintiff filed a petition in error in the court of common pleas of Lorain county, and assigned for error the refusal of the justice to charge as requested, and the charge as given to the jury.

The common pleas affirmed the judgment of the justice of the peace. And this judgment of affirmance was itself affirmed by the district court, on proceedings in error therein to the common pleas.

To reverse the judgment of the district court, the plaintiff filed his petition in error in this court.

*S. Burke,* for plaintiff in error.

*Sheldon & Boynton,* for defendant in error.

SUTLIFF, C. J.—There are numerous exceptions presented in the record, to the holding of the justice of the peace, upon the trial before him. It was really a trial of the right of possession between the parties. When the plaintiff, Smith, gave in evidence the lease showing an unexpired term granted by the defendant to him, it made a *prima facie* case, on his part, to recover possession of the premises. It then became necessary for the defendant, Whitbeck, to show that the term, which, by the indenture or lease, appeared to have been conveyed by Whitbeck to him, Smith, really did not exist in fact. This might have been shown by proof of a surrender or a forfeiture; or, in short, by any proof that the lease was not, in fact, in force between the parties at the time of the trial.

The defendant relied upon a termination of the estate expressed in the written lease, by a forfeiture and re-entry. If shown by proof that a forfeiture and a legal re-entry had occurred, the defense would be perfect; but it was incumbent upon the defendant to make full and satisfactory proof of this defense; since forfeitures are never favored in law.

He who asserts for himself title by forfeiture, must prove it by establishing every fact, and showing every circumstance and condition requisite to constitute the forfeiture, without the benefit of any presumptions in his favor.

The old books furnish much ancient and curious learning upon the subject of forfeiture of estates by tenants; but it is unnecessary here to do more than barely glance at the old and well-established rules upon the subject, in order to see whether the facts of this case are in accordance therewith.

In Coke upon Littleton (lib. 3, estates upon condition, 202a), it is said: "though the rent be behind and not paid, yet,.

if the feoffor doth not demand the same, he shall never enter,"
etc.  " Secondly, The demand must be made on the land, be-
·cause the land is the debtor.  *  *  *  If there be a house
upon the land, he must demand the rent at the house.  And
he can not demand it at the back doore of the house, but at
the fore doore, because the demand must ever be made at the
most notorious place.  And it is not material whether any
·one be there or not.  *  *  *  And all this is to be under-
stood, when the feoffor is absent, for if the feoffee cometh
to the feoffor at any place on any part of the ground
on the day of payment and offer his rent, albeit, they be not
at the most notorious place, nor at the last instant, the feoffor
is bound to receive it, or else he shall not take any advantage
of any demand of the rent for that day.  Therefore, the
place of demand being known, it is further to be known what
time the law hath appointed for the same.  This partly ap-
·peareth from that which hath been last said.  For albeit the
last time of demand of the rent is such convenient time be-
fore the sunn's setting of the last day of payment, as the
money may be numbered and received  *  *  *  notwith-
standing, if the tender be made to him that is to receive it
upon any part of the land at any time of the last day of pay-
ment, and he refuseth, the condition is saved for that time,
for by the express reservation, the money is to be paid on the
day indefinitely, and convenient time before the very last in-
stant, is the uttermost time appointed by law, to the intent,
that then both parties should meet together, the one to de-
mand and receive, and the other to pay it, so as the one
should not prevent the other."

ıt will be remembered, that in the time of Coke and Bacon,
the word "*prevent,*" signified " to come before the usual
time," in which former, but now obsolete, sense, the word was
·doubtless here used by Lord Coke.

And we find the following remark as to the time of payment
of the rent by the lessee, in the case of *Hill* v. *Grange,* 1
Plowden Rep. 172, decided Michaelmas T., 3 Phil. & Mary.:
·" So that his time to pay it continues until the separation of
·day and night, which is the time when the day ends and the

night begins. And, therefore, the lessee is not bound to be there before the last instant of the last time, and so (it was said) the opinion is held in 6 H. 7. And forasmuch as the lessee is not bound to pay the rent, until the last instant of the last day, for he is not bound to demand the rent until the other is bound to pay it; for if the law should force him to demand it sooner than the other is forced to pay it, it would be contrary to all reason, which our law is not, for it will not compel a man to make a vain demand or request for a thing which the other is not bound to pay. Yet, the law will compel him to make a demand, or else he should never enter, as it is held in 20 H. 6. And if the lessee does not come to the land the last instant of the last day to demand the rent, and the lessee be not there to pay it, the lessee shall never enter, because he ought to do the first act; that is, make a demand. And such demand shall not be until the other is bound to pay it, and that he is not, before the last instant of the last day, which time is only material for them both," etc.

And in the case of *Fabian* v. *Winston,* Croke's Rep. 209, decided in C. B., at Mich. T., 33 Eliz.: "the question was upon the avoiding of a lease upon condition for nonpayment of the rent." * * * "And upon a special traverse the issue was, if the plaintiff by Edm. Bedle, demanded £7 10s. of rent due to him for half a year, the twentieth day after the feast, by the space of half an hour before the sunset. And upon the special verdict, it was found that the said Ed. Bedle *petiit* £7 10s. *pro redditu dimidii anni Anglice,* for half a year's rent *præfato J. Fabian tunc debit pro tenementis prædictis,* and there remained demanding the rent by the space of a quarter of an hour, *et non plus* before the sunset, *tanquam ad,* and after the sunset; and that no rent was due but the half year's rent," then falling due. "The question was, if this verdict was found for the plaintiff or defendant? And all the court held as for the time, although it was not found to be half an hour, but a quarter of an hour; yet it was a good demand; for being demanded well enough for the time, it is not material, although it be not precisely according to the traverse. But they all held this demand of the rent

(then due), is not good; for he ought precisely to show upon his demand, what rent he demands; for, if it were due five years before, it was then due," etc.

This case very well illustrates the rule as to the *time* when the demand should be made. A *convenient* time before sunset, was understood, it appears, by the counsel, to be certainly included in the space of *half an hour* before sunset; for the averment so made by plaintiff's counsel was traversed, and not demurred to by the defendant's counsel. And when the verdict showed the time of the demand to have been from a quarter of an hour *before, until* and after the *sunset,* the court held the demand was made at the proper time.

Again, in the case of *Duppa, executor of Baskerville* v. *Mayo,* 1 Saund. Rep. 276, the question as to the *time* of demand was presented in king's bench. Trin. T., 22 Car. 2. "And Hale said," (according to the report of the case) "that although the time of sunset was the time appointed by law to demand rent, to take advantage of a condition of re-entry, and to tender it to save a forfeiture, yet the rent is not due until midnight; for if a man seized in fee makes a lease for years, rendering rent at the feast of St. John the Baptist, upon condition of re-entry for nonpayment, now the lessor, if he will take advantage of the condition, must demand it at sunset; yet, if he dies after sunset and before midnight, his *heir* shall have his rent, and not his *executors,* which proves that the rent is not due until the last minute of the natural day." By which I understand it to be held, that the last point of time at which the demand might legally be made was sunset; and that the lessor must be shown ready to receive it up to that precise point of time. The convenient time for counting the money, etc., must, therefore, be allowed by the demandant immediately preceding sunset. And, as we have seen, a quarter of an hour has been held sufficient to constitute "convenient time" before sunset.

In note 16 of that case (page 287), upon this subject, it is said: 1st. There must be a demand of the rent. 2d. It must be of the precise rent due; for if he demand a penny more or less, it will be ill. 3d. It must be made *precisely upon*

*the day* when the rent is due and payable by the lease to save the forfeiture. \* \* \* 4th. It must be made a *convenient time before sunset.* 5th. It must be made upon *the land,* at the most notorious place of it. Therefore, if there be a dwelling-house upon the land, the demand must be àt the front or fore door. But if the tenant meet the lessor on or off the land, at any time the last day of payment, and tender the rent, it is sufficient to save forfeiture; for the law leans against forfeitures.

In the case of *Tinckler* v. *Prentice,* 4 Taunt. Rep. 549, an action of debt to recover rent due the lessor from the tenant, the lessee pleaded as to 73*l.*, 16*s.*, the rent due, "that the plaintiff ought not to recover any damage for the nonpayment, because he, the defendant, on *Michaelmas day*, 1811," (the day the rent fell due), "was, at and shortly before setting of the sun on that day, at and upon the premises, and was ready and willing to have paid the plaintiff the sum of 73*l.*, 16*s.*, the rent then due and payable," etc. And, as to the plea, the court say: "The last plea comes to this short point, whether the part of that plea which the plaintiff has left unnoticed be alone a sufficient answer to the plaintiff's claim. It is necessary that the tenant should stay on the land to the very last time at which the thing can be done. But the defendant has not stated that, at the time of his attending on the premises, there was time or not time left before the setting of the sun to have counted the money. Therefore, I think the defendant can make nothing of that point. It is not sufficient that he was there, at and shortly before the setting of the sun; he ought to have pleaded he was there long enough before to have counted the money."

And we find this *time* of demand still recognized in England as the proper time, at a later date. In the case in king's bench, Easter term, 1829, *Doe on dem. of Wheeldon* v. *Paul,* 3 Car. & Payne, 613, Lord Tenterdon says: "The demand ought to have been made at the last hour of the day, at sunset; for the tenant has till then to make payment; and the demand, to work a forfeiture, should be made at the time when the tenant is bound to pay." And adds, what

32

should give weight to his opinion, that he had, in early life, had occasion to investigate the subject, and had written an elaborate opinion, which commanded the approbation of Mr. Erskine, etc. .

These authorities may suffice to show the rule as to the making demand of the rent, and the strictness required in making it, in order to thereby secure a forfeiture.

From the foregoing and other authorities, it may be laid down, as a well-established rule of law in England, that the *time* of demand must be such convenient time, immediately preceding sunset, as will allow the money to be counted, paid and received before sunset; and that the demandant, if the rent be not paid, should await payment, upon such demand, until sunset, in order to make the demand sufficient as to time.

And this rule as to the demand of rent, to secure a forfeiture, will be found to be fully recognized in this country, and applied with the same strictness in the American cases.

Thus, in the case of *Jackson* v. *Harrison*, 17 Johns. 66, it was held, by the supreme court of New York, in 1818, that "the lessor can not re-enter on the ground of a forfeiture for the nonpayment of rent, without showing a demand of the rent due, on the last day, of the tenant, on the premises, a convenient time before sunset, etc., or a strict compliance with all the formalities required by the common law; his claim being regarded as *stricti juris.*"

And, in the case of *Van Rensallaer* v. *Jewitt*, 2 Comst. Rep. 141, the court of appeals held, that the landlord, before he can exercise a right of re-entry, reserved for breach of covenant to pay rent, or bring ejectment at the common law, must make an actual demand of the exact amount of rent due, on the very day it becomes due, at a convenient time before sunset, and at the particular place where it is made payable, or if no place is specified in the lease, then at the most notorious place on the premises demised.

It will be found, in like manner, that the common law doctrine expressed by the English authorities is, in all respects, fully recognized in American courts, as shown by adjudicated

cases, in the different states, with much unanimity; and the same is equally true as to this state. See the case of *Boyd* v. *Talbert*, 12 Ohio Rep. 214.

Inasmuch as the record does not show that there was any proof that the entry and taking possession of the premises was forcible, or other than peaceable, on the part of the defendant, and permission on the part of the plaintiff, the right to recover, on the part of the plaintiff, depended entirely upon his title, as expressed by the lease, to his unexpired term. If, as has been said, the unexpired term shown by the lease still remained unextinguished in the plaintiff, the lessee, he was legally entitled to the possession and enjoyment of the same. The defendant having thus devolved upon him the burden of proof to defeat the *prima facie* title shown by the plaintiff, was required to do the same by *legal* proof. Inasmuch as he relied entirely upon an extinguishment of the remaining term of the lessee by forfeiture for nonpayment of rent, it was incumbent upon the plaintiff to show all the facts and circumstances necessary to constitute, in law, a forfeiture. One of those facts, and a very material one, was that the requisite legal demand of the rent was made by the defendant, the lessor. And upon this point the record shows that the defendant gave evidence, tending to show that, at the time the first quarter's rent fell due, July 15, 1859, he, the lessor, demanded of the lessee, the plaintiff, the rent, on the premises, at about one o'clock P. M. of that day; and that again, on the 15th day of October, when the second quarter's rent fell due, the defendant, at about four o'clock P. M., demanded the rent of the plaintiff, in like manner, upon the premises. It thus became a question of law, material in the case, whether the hour of one P. M., as to the first quarter's rent, was such "convenient time before sunset" for the time of demand as to be good and sufficient; and, in like manner, whether the hour of four P. M. was or was not within the legal limits of time prescribed by law for demand to be made of the rent so falling due October 15, for the second quarter. The plaintiff, therefore, had the right to have the jury instructed upon the matter.

The first, third and fourth instructions requested by the plaintiff of the court, to be given the jury, as to the necessity of a demand of the precise sum due and the particular time when the demand should be made, the plaintiff was clearly entitled to have given, in substance, to the jury. And the third request was strictly correct instruction for the jury, and that which the plaintiff had the right to have given, as requested.

But the court refused to say to the jury that proof of demand at one o'clock P. M., or that proof of a demand some time in the afternoon of the day, was not sufficient to constitute a legal demand.

The charge of the court upon the second and eighth propositions does not appear at all objectionable. But the instruction given in relation to the demand, that it must be made for "the precise sum due, at a convenient time before sunset, on the day when the rent is due, upon the land, in the most notorious place on it, even though there be no person on the land to pay," although not incorrect, was certainly insufficient. For, although the charge thus given by the justice was in the words used by Mr. Justice Daniel in the opinion delivered by him in the case of *Connor* v. *Bradley and wife* (17 Pet. R. 263), and can not be said to be erroneous, still it was not, either in language or substance, the charge requested to be given to the jury.

When there had been evidence given to the jury tending to show the demand of one quarter's rent to have been made at *one* o'clock, and a demand of the other quarter's rent at four o'clock, of the days when respectively due, it became a question of law, and material to the issue, whether those hours were respectively the "convenient time before sunset" expressed by the common law rule, at which a legal demand could have been made.

And this proceeding before the justice being one in which it is expressly provided that "exceptions to the opinion of the justice * * * * upon questions of law and evidence may be taken by either party," etc., we think the plaintiff was clearly entitled to the instruction asked to be given to

the jury. But the justice, indeed, not only declined and neg-lected to instruct the jury, as requested, but told them, in his instructions upon that subject, "that it was a fact for the jury to determine what was or what was not a convenient time for making such demand, under all the circumstances of each particular case," etc. We are clearly of the opinion that the justice erred not only in withholding the instructions asked, but also in the instruction thus given. And the court of common pleas consequently erred in affirming the judgment of the justice.

We, therefore, find that there is error in the record before us, in this: that the judgment of the district court was in affirmance of the proceedings in the court of common pleas, whereas it should have been in reversal of the judgment of that court.

The judgment of the district court must, therefore, be re-versed.

And this court, proceeding thereupon to render such judg-ment as the district court should have rendered, orders that the judgment of the court of common pleas be reversed; and, also, that the judgment of the justice of the peace be reversed, and that the plaintiff recover his costs in the premises.

And this cause is thereupon remanded to the court of common pleas for further hearing.

PECK, GHOLSON, BRINKERHOFF and SCOTT, JJ., concurred.