[*General Term, October,* 1872.]

MUTUAL BENEFIT LIFE INS. CO. *v.* JULIA M. FRENCH ET AL.

A mutual life insurance company insured the life of a member, for a certain annual premium, to be paid at the beginning of each year, and if not so paid, the policy was to cease and determine, the insured to forfeit all moneys paid and all rights under such policy. The insured paid three annual premiums, but gave his promissory note for the

next year's premium, the taking of which the company assented to' payable six months after date, bearing interest at a higher rate than the rules, etc., of the company provided for. The note provided: " Being for premium on policy No. 25,187, and if not paid at maturity, said policy is to be void." The note was not paid at maturity, nor did the company demand payment of the maker, on the day it became due, but urged payment at other times. The maker was solvent. When the next year's premium would have fallen due, by the terms of the policy, upon a tender made of it to the agent of the company, the latter refused to receive it, claiming that the risk had determined by reason of the non-payment of the note, and demanded back the receipt given for the previous year's premium, but continued to hold the note. In an action brought after the death of the insured, to recover upon the policy:

*Held*, that the payment of premiums in cash, as required by a policy of insurance, or by note, or, otherwise, taken in the manner the policy may prescribe, is a *condition precedent* to the continuance of the policy, and if not paid according to the required terms, such policy, *ipso facto*, ceases and determines, as the insured has the option whether he will continue to be insured in such company, which can not compel him to do so, or recover a renewal premium, if he elects not to continue the risk.

But if the promissory note of the insured be accepted by the company, in payment of such premium, on terms other than those prescribed in the policy or rules, etc., of the company, but stating that it is given for such premium, and if not paid at maturity, such policy is to be void, the terms of payment become a *condition subsequent*, and the policy is only void at the option of the company, which can, if it choose, recover the amount of the note *after* its maturity, the risk having attached.

To work *a forfeiture* for the non-payment of such a promissory note, the company must demand payment of it on the day it becomes due, during the business hours of the day, and if not paid, declare the policy forfeited, or *void*; but no such demand of payment of stipulated annual premiums, in the manner required by the terms of a policy of insurance, need be made.

The practice of asking a long series of charges, which, if given by the court to the jury, would amount to a partial, one-sided argument by the court of the party's case, commented on and condemned.

*Sage & Hinkle*, for plaintiff in error.

*Hoadly & Johnson*, for defendants in error.

YAPLE, J.    This is a petition in error, prosecuted by the insurance company, to reverse a judgment rendered against it, on the verdict of a jury, in favor of the defendants in error, at a special term of this court, for $8,248.20.    All the evidence adduced at the trial, the charge of the court, and the charges asked by the parties, are embodied in the bill of exceptions.    The insurance company is a mutual one, incorporated under the laws of New Jersey, the act of incorporation, instructions to agents, and the appointment of the general agent here, with an enumeration of his powers and authority, were put in evidence.    On July 6, 1864, the company, through its general agent at Cincinnati, Ohio, R. Simpson, insured the life of Maynard French, for the benefit of his wife, Mrs. Julia A. French, and he surviving her, for the benefit of their children, by policy No. 25,187, in the sum of $10,000, for an annual premium paid, and to be paid, of $725 per year, on or before noon of the 6th day of July of each year.    In policies where the annual premium amounted to more than fifty dollars, the rules of the company provided that only the one-half thereof should be paid in cash each year, and for the other half, the insured was required to give his note, drawing six per cent. interest, payable annually, which note was to be a basis for assessments for losses, among other things, and was made a lien on the policy till paid; and when annual dividends were declared, the amount thereof was to be deductible, at his option, from the insured's indebtedness for premiums. This would require a new note for the unpaid half due for premiums to be given each year.

This policy provides that if such annual premiums shall not be so paid, on the days named, the " company shall not be liable to the payment of the sum insured, or any part thereof, and this policy shall *cease* and *determine*." And if the policy shall cease, or " become null or void, all previous payments made thereon, and all profits, shall be forfeited to the company."

The annual premiums falling due respectively, on July 6,

1865 and 1866, were duly paid or settled for, to the accept-ance of the insurance company, the evidence being *that a credit was given on the cash part of each payment.* On July 6, 1867, the cash part of the premium to be paid was $427.76, and the note to be given on account of back premiums and that of the following year was $1,450, which note was given. By agreement with Simpson, the agent, May-nard French gave him his check, dated as of July 25, 1867, for $213.88, in the ordinary form, and a promissory note, of which the following is a copy:

"$213.87.                          CINCINNATI, *July* 6, 1867.

" Six months after date I promise to pay to the order of Mutual Benefit Life Insurance Company $213.87, *being for premium on policy* 25,187, *and if not paid at maturity said policy is to be void.*

" Value received; payable at Cincinnati, *with interest at seven per*                          M. FRENCH."

A receipt was then given to French for the year's pre-mium. The jury have found, upon all the evidence, that Simpson, the agent, had authority to settle for the premium in this manner, or that the company afterward ratified his action. The previous cash payments for premiums had been paid after a credit given therefor; and, on November 14, 1867, in answer to a letter of inquiry addressed to him by the company, dated November 9, 1867, Simpson wrote to the company that "25,187 *was paid by note.*" On November 19th, they wrote to him again, saying: "Policy No. 25,187 has not yet been reported by you; please do so if paid." The letter of Simpson to them, of the 14th, may not have come to hand; and after several more letters to Simpson from the company, stating that this policy was still "unreported," it says to him, on June 17, 1868, after the note had fallen due, "We would call your attention to the following cases *still unsettled,* and re-quest your early attention: . . No. 25,187." This term "unsettled," the jury may have supposed, in view of all

the other facts, meant "*unpaid*," and as no objection was ever expressly made to the taking of such note, that the company assented to taking it; and we can not say they erred in so finding. Simpson frequently demanded of French payment of both check and note; *but he made no demand upon French for payment of the note the day it became due.* French, during all this time, and until his death, *was solvent.*

On July 6, 1868, French, as the jury have found, and we think, upon sufficient evidence, tendered to Simpson, the agent, the amount of the cash premium due upon that day, and was ready and willing to give his note for unpaid premiums, to be secured by note, but Simpson refused the same, claiming that the policy had ceased to be in force by reason of the non-payment of the note copied above. To be reinstated, he claimed that French would be required to procure a certificate of health on re-examination, as was provided for by the rules of the company. This, both he and French knew the latter could not procure, for his health had then failed, and he had grown old. The company, for some time before, and ever since, have denied all liability upon the policy. French and his wife died, and their children brought this suit, and obtained the verdict and judgment sought to be reversed. We need not notice the non-payment of the check, for that contained no stipulation for a forfeiture in case of its non-payment, and interest afforded full compensation for delay in paying it. The question is, whether the policy ceased to be operative and became void on the non-payment of the note when it became due, on January 9, 1868. It stipulated that it was for premium, and if not paid at maturity, the policy should be *void.* It was not taken in pursuance of any of the terms or requirements of the policy, or rules or laws of the company, which only require notes, where the same are authorized to be taken, drawing *six* per cent. interest. It was taken for part of a premium due, *seven* per cent. being the consideration for the delay of such payment.

Now, what is the legal effect of the policy itself? It is an agreement to insure the life of French from year to year during his life, on the payment to it, each year, of a certain amount of money as a premium for the risk taken. His failure to pay such premium at the beginning of each year, unless waived by the company, *ipso facto*, would cause the policy to "cease" and determine.

It was a contract that could only continue from year to year, at *the option* of the insured, who could let it drop at any time. If, on July 6, 1867, the insured had said to the company, "I will not pay; I do not wish to insure longer in the company," it could not have compelled him to do so. It could not have sued and recovered from him that or any subsequent year's premium. Its remedy was provided against the insured by the forfeiture of all his moneys previously paid and rights under the policy. Hence the payment of each year's premium was a *condition precedent* to the further existence of the contract. See *Mutual Benefit Life Ins. Co. v. Jarvis*, 22 Conn. 133.

Had this note been taken in pursuance of any stipulation of the policy, or rules or laws of the company authorizing it as a method of paying the annual premium, it would then have been a condition precedent to the continuance of the policy, and upon non-payment when due, the policy would have ceased and determined, as of July 6, 1867; but if not so provided for, this would not necessarily be so. *McAllister v. New Eng. Mut. Life Ins. Co.*, 101 Mass. 558; *Robert v. New Eng. Mut. Life Ins. Co.*, 1 Dis. 355; S. C., 2 Ib. 106, 107; *N. E. Mut. Life Ins. Co. v. Harbrook*, 32 Ind. 449.

Let us, then, inquire whether the note given in this case could have been sued upon and recovered by the company after it became due, or whether the maker could have successfully defended against it on the ground that he had elected to insure no longer with the company. We think he could not. The risk for the whole year would have commenced; the policy for that year would have attached,

and the company would have carried it six months and three days, liable, in case of the insurer's death, during the whole time. The payment of the note became a condition *subsequent*, which only the company could avail itself of. There would have been an election on the part of the insured to insure for another year, and not a refusal to do so, as if he had not attempted to pay the premium for the year, in which case there would have been no liability on his part. Such terms in the note made the policy merely *voidable* at the option of the company. Forfeitures are not favored, especially where delay can be compensated for in money. *Boyd* v. *Talbert*, 12 Ohio, 212, 214; *Smith* v. *Whitbeck*, 13 Ohio St. 471. Still the company might have forfeited the policy on non-payment of the note when it became due; but it should have exercised the right promptly. It should have demanded payment on the last day of grace during the business hours of the day; and if such payment was not then made, it should have declared the policy forfeited or void. This is in accordance with well-settled rules for enforcing forfeitures for breaches of conditions subsequent. No such demand is required in the case of the non-performance of *conditions precedent*, as the stipulation in a policy for the payment of annual premiums, though it is usual for companies to notify parties a few days in advance of the time such annual payments are to be made, but this is mere accommodation. The company, then, did not determine or make void this policy when the note fell due, and it became a mere debt, like the check given for the other half of that year's cash premium.

This may seem to be a harsh requirement, but let it be borne in mind that, in conducting the business of life insurance, its rules should not be violated or departed from, as was done in this case. If parties will depart from the settled and safe usages of the business, and enter into collateral agreements governed by entirely different rules of law, they must bear the consequences. In their anxiety to do a large business and reap much from premiums on risks,

insurance companies are too generally departing from the course that experience has demonstrated to be essential to their soundness and safety.

This disposes of the objections to the charge of the court. They were, in our view, favorable to the company. In none of the charges asked by the company, and refused and qualified, or asked by the plaintiff and given, do we find any error prejudicial to the company. The charge asked, that the insured "is" held to a knowledge of the rules, etc., of a mutual company, did not prejudice the party in this case, by the court giving instead, "*may* be held*," etc., for there was evidence before the jury of assent by the company to this particular transaction, though not covered by its rules, and, in the form asked, the charge might have misled the jury. It would take too much time to particularly specify and comment upon all the charges asked, as they are long and numerous. A practice has become common of drawing up a long list of charges, which, were a court to give them, would amount to a very partial, one-sided argument by the court to the jury of such party's case, and exclude from them the real questions of fact to be determined in view of the whole subject of dispute. Why this practice should continue it is difficult to see, as in almost every instance it defeats such party before the jury, who always realize that such instructions do not fairly cover the case, and who naturally think that such party has no hopes of his case, and is merely attempting to defeat justice by a series of technicalities; and if the court shall have charged the jury correctly upon the subjects upon which such charges are specially asked, giving their due relations to, and bearings upon, other matters—as a court is not bound to give a charge in the very language asked—reviewing courts will favor its course, and look with no great favor upon the long list of charges asked, and which it declines to give.

We think the evidence warranted the verdict. The judgment below is therefore affirmed, but without penalty.