## Case No. 362.

ANDERSON et al. v. ST. LOUIS MUT. LIFE INS. CO.

[1 Flip. 559;[1] 5 Amer. Law Rec. 140; 22 Int. Rev. Rec. 249; 5 Ins. Law J. 605; 2 N. Y. Wkly. Dig. 458; 1 Mich. Lawy. 17; 3 Cent. Law J. 354; 1 Cin. Law Bul. 203; 5 Bigelow, Ins. Cas. 527.]

Circuit Court, W. D. Tennessee. May 19, 1876.

LIFE INSURANCE—POLICY—CONDITION PRECEDENT — COURSE OF BUSINESS — RELIEF AGAINST FORFEITURE.

1. A policy of life insurance provided that if the insured did not pay annually in advance the interest on any unpaid notes or loans to the company on account of premiums, the company should not be liable for any part of the insurance, and the policy should cease and determine. Performance of this obligation by the assured was a condition precedent, and no recovery could be had without it.

2. The assured had been in the habit of paying this interest in cash, and for dividends earned the company credited him upon the principal of the notes outstanding; Held, that this course of business controlled the general principle of law, which requires payments upon notes to be credited first upon the interest, and then upon the principal, and that the policy would be forfeited, notwithstanding the dividends earned might exceed in amount the interest due upon the outstanding notes.

3. Against a forfeiture of a life insurance policy, incurred by non-payment of premiums upon the day stipulated, equity will not relieve.

In equity. Bill charged that on the 15th day of October, 1867, the defendant issued

---

[1][Reported by William Searcy Flippin, Esq., and here reprinted by permission.]

to William C. Anderson a policy of assurance for $10,000, the premiums being $490 per annum for life. It provided that, if two of said premiums shall be paid and default be made in payment of after premiums, the default shall not operate as a forfeiture, but the amount insured shall be commuted to the sum of the annual premiums paid. But if the insured failed to pay as above, or to pay annually in advance the interest on any unpaid notes or loans, then the company was not to be liable for any sum, but the policy was to cease. The policy continued in force to the 15th of October, 1870. Bill further stated that some of the interest —a small amount—on unpaid notes was not paid in advance annually; probably there was a failure to pay interest on one such note. The complainants did not know how this was. They insisted that the stipulation providing for payment of interest in advance was a penalty against which the court would relieve. Bill prayed for statement of the notes in defendant's possession and for an account of dividends that Anderson was entitled to since January 1, 1869; that the court would relieve against the forfeiture of the policy, and decree to complainants whatever amount might be justly due them. Demurrer was interposed, the grounds of which were, that, as the bill admitted the non-payment of certain interest in advance, when for that the policy provided a forfeiture, all previous payments thereon, and all dividend credits accruing thereon, should likewise be forfeited; and consequently equity would give no relief.

W. M. Smith, for complainant.
Kortrecht, Craft & Scales, for defendant.

BROWN, District Judge. There are three questions in this case, which, though not raised separately upon the face of the demurrer, are necessary to be determined in order that it may be properly disposed of. 1st—Under the policy in question, does the failure to pay the interest in advance upon the premium notes debar the plaintiff of a recovery, and work a forfeiture of the premiums already paid? 2d—Was the defendant bound to apply the dividends due the assured upon the interest upon the premium notes, instead of applying them upon the principal, and thus save the policy from lapsing? 3d—Will a court of equity relieve against the forfeiture of a policy of insurance incurred by reason of the non-payment of premiums?

The first question must be answered in the affirmative. The second proviso of the policy is unequivocal, that "if the assured fail to pay annually in advance the interest on any unpaid notes or loans which may be owing by the insured to the company on account of annual premiums, the company shall not be liable for the payment of the sum assured, or any part thereof, and this

policy shall cease and determine." The fifth clause also provides that, "in every case where this policy shall cease or become null and void, all previous payments made thereon, and all dividend credits accruing therefrom, shall be forfeited to the said company." Nothing could be plainer than this language. The prompt payment of premiums is the very essence of the contract of life insurance. The company has a right to insist upon the performance of this covenant upon the day named, as a condition precedent to the continued existence of the policy. So far, at least, the law is well settled. Bliss, Ins. 253–274; May, Ins. 406; Robert v. New England Mut. Life Ins. Co., 1 Disn. 355, 2 Disn. 106; Want v. Blunt, 12 East, 183; Beadle v. Chenango Co. Mut. Ins. Co., 3 Hill, 161; Pitt v. Berkshire Life Ins. Co., 100 Mass. 500; Baker v. Union Mut. Life Ins. Co., 43 N. Y. 283; Phoenix Life Assur. Co. v. Sheridan, 8 H. L. Cas. 745; Cator v. American Life Ins. & Trust Co., 4 Vroom, [33 N. J. Law,] 487. If it were otherwise, as it is optional with the assured to drop his policy at any time, the company could never know whether he intended to keep it alive or not. Phoenix Life Assur. Co. v. Sheridan. 8 H. L. Cas. 745; Simpson v. Accidental Death Ins. Co., 2 C. B. (N. S.) 257. If the company elects to accept a note, and insists upon its prompt payment, or upon payment of interest in advance, it is a proviso for the benefit of the assured, and the company has the same right to insist upon punctual payment. Patch v. Phoenix Mut. Life Ins. Co., 3 Bigelow, Cas. 780; Wall v. Home Ins. Co., 36 N. Y. 157; Williams v. Republic Ins. Co., 19 Mich. 469; Pitt v. Berkshire Life Ins. Co., 100 Mass. 500; Robert v. New England Mut. Life Ins. Co., 1 Disn. 355. Nor is there anything harsh or oppressive in this requirement. The contract of insurance is one in which great risks are assumed by one party, and there is no injustice in requiring a punctilious observance of its obligations on the part of the other. The company says in substance to the assured: "Pay me $490 today, and if you die to-morrow, or at any time during the year, I will pay your representatives $10,000; pay me the same sum annually, and this arrangement shall be continued during your life, with the assurance that your representatives will receive the $10,000 upon your death, whenever it may happen. But if, on the other hand, you fail to make your annual payments, your heirs shall not only not receive the $10,000, but you shall forfeit the amount already paid." I see nothing unfair or inequitable in this bargain, nor any reason why the company should not insist upon an exact performance by the assured. The hardship, if any there is, is quite as likely to fall upon the one party as the other, with this difference, however, that the contingency of loss by death is one the company cannot possibly

provide against, while the payment of premiums is always within the power of the assured, and nothing but his own negligence will cause a lapse of his policy. The fact that in this case the annual interest to be paid was very small, works no change in the principle. Indeed, it renders performance of his covenant on the part of the assured so much the easier.

I fail to see why courts should apply to policies of insurance rules of construction different from those applicable to ordinary instruments. If there is anything unjust in the proviso for the forfeiture, it is one which the legislature and not the courts are called upon to remedy. Something may be gained to justice by bending the law to the exigencies of an individual case; but more is lost by the bad precedent to the certainty of the law as a science. While a company which desires to increase its patronage and stand well in public estimation would not, as a matter of policy, habitually take advantage of accidental slips or omissions of its policy-holders, the law cannot distinguish between these cases and those where the assured elects deliberately to abandon his contract. In this case, however, there is nothing tending to show any desire on the part of the assured to keep his policy alive after October 15, 1870. As observed by the court of appeals of St. Louis, in the case of Russum v. St. Louis Mut. Life Ins. Co., [1 Mo. App. 228,] the clause in the policy providing for commutation on failure to pay the annual premiums, and for a forfeiture on a failure to pay the interest, are not inconsistent: "They can both stand together, and we may give full effect to both. All that is needed for this is for the insured to bring himself within the terms of both. The first is intended to save the forfeiture which generally would be incurred by the failure to pay the annual premium; to this extent it is a privilege or advantage to the assured. The second proviso insists upon rigorous conditions in respect to what? Only of so much of any unpaid premium as the assured, instead of paying in cash, takes the indulgence of only paying interest on at six per cent. If he does not wish to incur the hazard of a forfeiture on account of this part of the premium, his remedy is easy. He can presently pay his note for the premium, and without more, he has a paid-up non-forfeitable policy for a fixed portion of the sum contemplated by the instrument when originally issued. If he wished, instead of this, to take the chances of gain, he must at the same time incur the hazard of loss; and cannot complain if he be held to the terms of the contract he has deliberately made."

I am unable to concur in the opinion of the court of appeals of Kentucky, in the case of St. Louis Mut. Ins. Co. v. Grigsby, 2 Cent. Law J. 123, that by commutation this became "a paid-up policy, except that the company had the right, should its affairs render it necessary and proper, to demand the payment in whole or in part of the note executed for the unpaid portion of the three annual premiums." The court in this case treat the unpaid notes as loans to the assured, and the "interest on these loans in no sense an annual premium due from the assured to the insurer." The effect of the ruling is that the company has no remedy to enforce payment of notes, except to bring an ordinary action at law, to trust to dividends earned in a successful business to meet them, or to wait until the death of the assured and deduct them from the amount of his policy. If this be the law, then the assured. under every policy issued by the company, after the payment of the two first annual premiums, may give no further attention to it, and the company be left to carry on its business, pay its expenses, its losses, its dividends and other outlays, simply from the interest of the cash moiety of the first two annual premiums. The opinion throws no light upon the probable amount of dividends which a company, conducted under these principles might be expected to pay.

2d—Was the company bound to apply the dividends due the assured upon the interest instead of the principal of the premium notes, and thus save the policy from lapsing? The policy throws no light upon this point. It contains no agreement for the payment of the dividends. The charter of the company is not before the court, and we can look only to the allegations of the bill to answer the question. The bill avers that the defendant, being a mutual company, the assured, by virtue of his policy, became a member, and interested in its earnings and profits—was so considered and treated by defendant, and dividends were declared in his favor, and instead of being paid over to him in cash were credited on his annual premiums, as complainant supposes, and has no doubt, with the consent of the assured. From the bill and the exhibits the transaction appears to have been as follows: On the 15th of October, 1867, the policy was issued upon a payment of $245 in cash and a note for $245, upon which interest was paid in advance. On October 15th, 1868, the assured made another cash payment of $245, gave another note for the like amount, and paid in cash $20.40 [2] interest on the two notes for one year. No dividend was credited to him at that time. On October 15th, 1869, a statement was made as follows:

| | |
|---|---|
| Notes outstanding | $490 00 |
| Less dividend declared Jan. 1, 1869 | 87 45 |
| Balance of outstanding note | $402 55 |
| Note portion of premium—due above date | 245 00 |
| Total new note | $647 55 |

[2] [22 Int. Rev. Rec. 250, gives $29.40.]

Interest due in cash on note......... $ 38 85
Cash part of premium due above date   245 00

Total cash required.............. $283 85

To this the receipt was appended.

While the general rule is admitted without hesitation, that where money is paid upon a note the law will apply it first upon the interest and then upon the principal, still, where the contract makes a different provision, or the course of business between the parties has established a different usage, I think the general rule must bend to this special agreement or custom. The policy makes no special provision for dividend credits, and its second proviso requires payment annually in advance of interest upon unpaid notes. The course of business between the parties, as evidenced by the exhibits, shows that the annual dividend which was credited to the assured was deducted from his notes outstanding October 15, 1869, and not from the interest upon the new note, which was given at that date. This interest was paid in cash. This was done with the assent of the assured, who appears to have given a new note for $647.55. All that the company could be required to do in crediting subsequent dividends was to apply them, as had been done before, upon the principal of the outstanding notes, and as the assured had paid his interest in cash, I think he must be held as assenting to this arrangement. A similar rule or custom was recognized as binding upon both parties in the case of Ohde v. The Northwestern Mut. Ins. Co., 4 Ins. Law J. 702. If there is anything in the regulations or prospectus of the company negativing the course of business evidenced by these exhibits, it should be set forth, and I think the bill demurrable upon that ground.

3d—Has a court of equity power to relieve against the forfeiture of a policy? In Story's Equity Jurisprudence, (section 1314,) it is said: "Whenever a penalty is inserted merely to secure the performance or enjoyment of a collateral object, the latter is considered as the principal intent of the instrument, and the penalty is deemed only as accessory, and therefore as intended only to secure the due performance thereof, or the damage really incurred by the non-performance. In every such case the true test by which to ascertain whether relief can or can not be had in equity is, to consider whether compensation can be made or not." But in section 1323, it is said: "The doctrine seems now to be asserted in England that in all cases of forfeiture for the breach of any covenant other than a covenant to pay rent, no relief ought to be granted in equity, unless upon the ground of accident, mistake, fraud, or surprise, although the breach is capable of just compensation." Section 1325: "It is upon grounds somewhat similar, aided also by considerations of public policy and the necessity of a prompt performance in

1FED.CAS.—54

order to accomplish public or corporate objects, that courts of equity, in cases of the non-compliance of the stockholders with the terms of payment of their installments of stock at the time prescribed, by which a forfeiture of their shares is incurred under the by-laws of the institution, have refused to interfere by granting relief against such forfeiture." In the Grigsby Case, already cited, the court of appeals of Kentucky seemed to hold that equity would relieve against a forfeiture incurred by the non-payment of premiums; but I think this is opposed by a great weight of authority, including that of the learned circuit judge of this circuit, in the case of Tait v. New York Life Ins. Co., [Case No. 13,726,] where the doctrine is fully discussed, and the conclusion reached that equity has no power to afford relief. See, also, Robert v. New England Mut. Life Ins. Co., 1 Disn. 355; Mutual Benefit Life Ins. Co. v. French, 2 Cin. R. 321. As a further discussion of this point would be a mere reiteration of the opinion of the learned judge in the case above cited, nothing more will be added, except to say that this opinion is considered as an adjudication binding upon this court. The demurrer to the bill is therefore sustained.

NOTE, [from original report.] Judge Emmons, in Frazer v. St. Louis Mut. Life Ins. Co., [unreported,] at Nashville, decided almost the same question raised here. It was there contended that the policy was a paid-up one, there being only a small amount of interest to be paid every year. The court held that the policy, by reason of the failure to pay the stipulated interest, was not to be considered as forfeited, but as lapsed; and as time was of the essence of the contract, the plaintiff could not recover. See, also, cases of Seyms, Buck and Statham against the Insurance Companies, October Term, 1876, S. C. U. S. [93 U. S. 24.] The court decide in these cases, in effect, that a failure to pay annual premiums during war or peace, determines the policy, but that its equitable value may be recovered.