MILLER, impleaded, etc. *v.* SPARKS.

1. A lessor, before he exercises the right of re-entry reserved for breach of covenant to pay rent, must make actual demand of the amount due in strict compliance with the requirements of the common law.

2. That which is apparent to the court and appears from a necessary implication out of the record, is the same as if it were expressly averred.

3. That a complaint in an action of unlawful detainer under the statute (R. S., p. 332) alleges a forcible detainer, and also alleges a demand for possession when no demand was necessary, does not affect the sufficiency of the complaint, or render it obnoxious to the objection that two causes of action are stated in one count.

4. Under the statute (Laws 1872, p. 110, § 7), where a cause is brought into the district court of Gilpin county, from a justice's court by *certiorari*, it is in the power of the court to render an independent judgment upon the law and the evidence, without reference to the inquiry whether the judgment of the justice was an entirety or otherwise.

*Appeal from District Court of Gilpin County.*

FORCIBLE entry and detainer. Sparks, the appellee, filed his complaint before a justice of the peace of Gilpin county, substantially as follows:

That "on the 27th day of August, 1875, at said county, Alexander C. Newton and Loring P. Miller were the owners of, and in the possession of, the following described lode, mine and mining claim to wit: the east eight hundred feet of the Grand Army lode, situate in Eureka mining district, in said county, being the east eight hundred feet of that certain claim on the Grand Army lode, sixteen hundred feet in length, patented to said Loring P. Miller & George Newton, by the government of the United States. Also a certain shaft on said lode just outside of the surface boundaries of said Grand Army lode, as described in said patent, being same shaft sunk by said Miller and one George Wood; that on said 27th day of August, 1875, Alexander C. Newton and Loring P. Miller made and executed and delivered to said Ozias T. Sparks, their certain lease in writing, signed and sealed by said Miller & Newton and said Sparks, whereby said Miller & Newton conveyed, demised, leased and let unto said Sparks said above described premises, being said eight hundred feet on said lode, and said shaft, for and during the term of three years from the said 27th day of August, 1875; that said Sparks then and there, to wit: on said 27th day of August, 1875, entered upon and into the peaceable possession of said shaft and said eight hundred feet on said lode, was then, and from thence until the 1st day of March, 1876, in the quiet, peaceable and undisputed possession of said premises, and was during all that time working and mining said premises, according to and under, and by virtue of the said lease, so

executed to him by said Newton & Miller; that on the 1st
day of September, 1875, said Sparks employed said Loring
P. Miller and one George Newton to work for him in sink·
ing a shaft and mining and hoisting ore on said mine,
and said Miller and said George Newton worked for him
from said 1st day of September, 1875, up to the 1st day of
March, 1876, as his servants and employees, part of the time,
and part of the time said Miller was working upon a con-
tract with said Sparks for sinking the shaft; that on the
29th day of February, 1876, said Sparks was at the said
mine as usual during the day, and went home at night,
leaving one shift at work upon the mine, among whom was
the said Miller; that the said Sparks returned to said mine
at the usual hour on the morning of the 1st of March, between
seven and eight o'clock, and found the door of the shaft
house on said mine closed, and locked upon the inside,
and the front door also locked upon the outside; that said
Miller and George Newton were upon the inside; that said
Sparks called upon them to open the door and admit him
to the said shaft house and premises; that they refused to
do so, and the said Miller said to complainant that he had
possession of said premises and was running it, and that, if
complainant came in the said shaft house, he would get
hurt; that complainant then attempted to get in, and reached
inside and tried to open the door, whereupon said Miller
struck complainant on the hand with an axe, and wounded
and injured the said complainant, and by such force, vio-
lence and threats of violence, did then and there, to wit: on
said 1st day of March, 1876, turn said complainant Sparks
out of possession of said premises, theretofore so possessed
by him as aforesaid, and did then and there by such force,
violence and threats, detain and hold possession of said
premises, and with said Alexander C. Newton, has ever
since unlawfully detained said premises against the right of
said complainant, although the said Sparks has since the
said entry of the said Miller and Alexander C. Newton, to
wit: on the 3d day of March, 1876, made a demand, in

writing, of the said Loring P. Miller and Alexander C. Newton, for the possession of said premises, and mine and shaft thereon, a copy of which demand, in writing, is hereto attached and made a part hereof, marked 'A.' Yet they, the said Loring P. Miller and Alexander C. Newton now unlawfully detain and hold the possession of said premises and mine, and against the right of said complainant, there- fore, he prays that the said Loring P. Miller and Alexander C. Newton may be summoned to answer this complaint, as is by statute in such cases made and provided."

Second count substantially the same as the foregoing, except as to the allegation of the entry, which was as follows:

"That on said first day of March, 1876, said Loring P. Miller and Geo. Newton, said Geo. Newton acting for Alex- ander C. Newton, unlawfully and forcibly entered upon said mine and premises, and forcibly detained the same from the said Sparks, and said Miller and Alexander C. Newton still unlawfully detain said premises, although said Ozias T. Sparks is lawfully entitled to the possession thereof, and has since said forcible entry, and before bringing this suit, made demand in writing of said Alexander C. New- ton and Miller, for possession thereof."

The separate answer of Miller was as follows:

" Loring P. Miller, defendant in this suit, by way of an answer to the complaint in this case, by this, his amended answer to the first count in said complaint, says, he admits the making of the lease, together with the said Newton, and delivering the same to said Sparks, as in said first count of the complaint is alleged; admits that Sparks took pos- session of said premises and worked the same for the time, in the manner set forth in said count; admits that when Sparks came there on the morning of the first of March, 1876, the doors of the shaft house or building were closed and fastened as is charged and set forth in said first count; admits that he and George Newton were in the shaft house on the morning of the first day of March, 1876, when said

Sparks came to the said building or shaft house, and demanded the door to be opened and his admittance therein; admits he denied admittance to said Sparks at that time into said building and shaft house, but he denies that he said to said Sparks that he (Miller) would hurt him (Sparks) if he came into said shaft house or mine, and he denies that he struck said Sparks on the hands with an axe, or with any thing else, or that he touched him in any way, or used any threats of violence or injury to said Sparks, or that he used any words or actions, as have a natural tendency to excite fears or apprehension of danger toward said Sparks, or that he frightened said Sparks out of the possession of said premises, as in the said complaint is alleged ; denies that he alone, or together with Alexander C. Newton, has kept or detained the possession from said Sparks of said premises, or any part thereof, by threats, or by force or violence, or in any other way, from the said first day of March, 1876, until the commencement of this suit, or for any part or portion of said time, except as hereinafter stated, and he denies that he has since the first day of March, 1876, either by himself or together with Alexander C. Newton, by force, violence or threats, kept or detained, or held possession of said premises or any part thereof, against the rights of said Sparks, as in said first count is alleged; admits that said Sparks served a paper on him demanding the possession of said premises on the third day of March, 1876, but whether said paper or notice was sufficient in law for the purpose intended he neither admits or denies, but will demand strict proof of the same at the trial; avers he did not have possession of said premises or any part thereof at the time said notice was served upon him, and could not give possession thereof, and has not had possession since that time.

And this defendant further answering the first count of said complaint says, that the lease mentioned and set forth therein among other things provides that said Sparks shall work and mine said premises in a good and workmanlike manner, including timbering said mine whenever or

wherever necessary, that said Sparks should pay to said Newton and this respondent as rent therefor ten per cent of the gross proceeds of said mine, payable whenever and as often as any ore shall be crushed, or treated or sold, and the proceeds thereof returned therefrom, said rent to be paid to said Newton and this respondent, or deposited to their credit in the Rocky Mountain National Bank, in Central City, in said Gilpin county, and in case said rent shall not be paid or deposited at the time and in the manner specified in said lease, the said Newton and this respondent might re-enter and take possession of said mine and premises, and every part thereof, and occupy and enjoy the same as of their first and former estate, and the said Sparks be put out of said premises, and the said Newton and this respondent have the right to use such force as may be necessary in so doing, and all rights of the said Sparks under said lease shall cease and absolutely determine. That said Sparks on or about November, 1875, had some two or three cords of ore mined, and taken from said premises, and crushed, and reduced, and received therefor at least one hundred and twenty dollars, ten per cent of the gross proceeds of which, under the terms of said lease, belonged to and should have been paid to said Newton and this respondent, by said Sparks as rent, but how much more rent is due them from said Sparks he does not know and cannot state, but said Sparks did not pay or offer to pay said Newton and this respondent, or either of them, any part thereof. Neither did he deposit the said rent, or any part thereof, in the Rocky Mountain National Bank, at Central City, to the credit of said Newton and this respondent, or to the credit of either of them, wherefore, upon the morning of the first day of March, 1876, the defendant went upon the said premises and into the shaft-house and building, peaceably and without force, and when no person or persons were in or upon the same, and took quiet, peaceable and lawful possession of said shaft-house and mine as aforesaid possessed by said Sparks, as he lawfully might do

under the terms of said lease, because of the forfeiture of said lease on the part of said Sparks, for the neglect and failure to pay the rent then and there due, under the same as aforesaid, and for said Sparks' neglect and failure to work and mine said premises, in a good and workmanlike manner in this, in not timbering said mine whenever and wherever necessary; avers that when he took possession of said premises as aforesaid, the said sum of twelve dollars and over for the rent had been due this defendant and Alexander C. Newton since the first day of December, 1875. And this defendant further answering says : That after he had taken possession of said premises as aforesaid, on the morning of March 1st, 1876, he immediately turned the said premises and every part and portion thereof, together with the appurtenances thereon, over to James C. Fagan ; avers that he has not had the possession of said premises since the said first day of March, 1876, and then only for a very short time, and he denies that he alone, or together with said A. C. Newton, is guilty of forcibly entering into the possession of any part or portion of the premises mentioned and described in the said first count, on the first day of March, 1876, or at any other time, and dispossessing said Sparks, and by force, violence and threats, detained and held possession of said premises against the right of said Sparks, as in said count is alleged, and this he is ready to verify, wherefore he prays judgment."

The answer to the second count was substantially the same as the foregoing, denying the entry of respondent with George Newton as alleged in the second count.   Sparks demurred ; the demurrer was sustained and Miller elected to stand by his answer, and final judgment was thereupon entered on the demurrer. The cause coming on to be heard on the complaint, and the answer of Newton, the court, after hearing the evidence, gave judgment in favor of the plaintiff. Upon the review of the cause on *certiorari* in the district court, the judgment as to Miller was affirmed, and as to Newton reversed, and a writ of possession awarded the plaintiff.   Miller prayed an appeal to this court.

Mr. WM. R. GORSLINE and Mr. L. C. ROCKWELL, for appellant.

Messrs. BELFORD & REED, for appellee.

ELBERT, J. A lessor before he exercises the right of re-entry reserved for breach of covenant to pay rent, must make an actual demand of the amount of rent due, in strict compliance with the requirements of the common law.

Whenever a forfeiture for the non-payment of rent is to be established, it is necessary to prove such a demand. Taylor's Landlord and Tenant, §§ 297, 298; *Chadwick* v. *Parker*, 44 Ill. 326; *Smith* v. *Whitbeck, et al.*, 13 Ohio St. 471; *Jackson* v. *Harrison*, 17 Johns. 66.

The defendant Miller could not avail himself of the right to re-enter the leased premises under the terms of the lease, without having first made a demand of the rent due, and in the absence of any allegation that such a demand was made, the matter set up in the answer did not constitute a defense.

The demurrer to the answer was properly sustained.

It is insisted, however, that the complaint is fatally defective and that the demurrer must be carried back to the first defective pleading.

The objections urged against the complaint are:

1st. That it does not show that the defendant entered upon the possession of the plaintiff.

2d. That two causes of action are stated in one and the same count.

Undoubtedly it is necessary, in an action of forcible entry and detainer, to show in the complaint that the defendant entered upon the possession of the plaintiff.

The allegation in the complaint in the case at bar "that Miller * * * by such force, violence and threats of violence did then and there, to wit, on said first day of March, 1876, turn said complainant, Sparks, out of possession of said premises" is in substance an averment that the com-

plainant was in possession of the premises at that date, and, taken in connection with the other averments of the complaint, satisfies the rule above stated. *Sparck* v. *Forsyth*, 40 Ill. 440; *Lee* v. *Stiles*, 21 Conn. 504.

."That which is apparent to the court and appears from a necessary implication out of the record is the same as if it were expressly averred." *State* v. *Nichols*, 8 Conn. 499.

Whether the facts stated in the complaint constitute a forcible entry or not is immaterial as the action lies, where the possession is maintained with force and strong hand, although the entry may have been peaceable (R. S., p. 332).

The allegations of the complaint show fully and clearly a forcible detainer under section two of the act. .That the complaint alleges a demand of possession, when no demand was necessary, does not affect its sufficiency, or render it obnoxious to the objection that two causes of action are stated in one and the same count.

For these reasons the objections to the complaint are not regarded as well taken.

Section seven of the act concerning *certiorari* to justices and probate courts, provides that the district court "shall give judgment in the cause as the right of the matter may appear * * * and may affirm or reverse the judgment in whole or in part, or may render such judgment as the facts and law warrant."

Under the broad provisions of this section, we have no doubt of the power of the district court to render an independent judgment; to review and revise the whole case, and give such judgment as the justice should have given. *Berry* v. *Lowe*, 10 Mich. 9.

In the case at bar, the district court, upon the hearing, entered an independent judgment to the effect that the complainant, Sparks, recover the possession of the premises in controversy; that he have a writ of possession therefor, that he recover his costs as against Miller, and that the defendant Newton go hence without day and recover his costs against the complainant.

The power of the court to render such a judgment we think full and complete under the concluding clause of the section above quoted, to wit: "or may render such judgment as the facts and the law warrant."

The authorities relied upon by the appellant were under statutes in which this provision does not occur.

In the leading case of *Sheldon* v. *Quinlin*, 5 Hill, 442, the provision construed is "or give such judgment for *either party* as the very right of the matter may seem to require."

Justice BRONSON says, "the word 'party' as here used stands for *plaintiff* or *defendant*, and includes all persons belonging to a particular class. The clause does not mean that a judgment which is entire may be reversed as to one defendant and affirmed as to another, without any regard to the rules of law applicable to the case."

This decision was followed in Wisconsin in a number of cases, but is questioned by Chief Judge DIXON in the case of *Ditting* v. *Weber*, 29 Wis. 560.

It will be observed, however, that the provision is different from that in the statute of this State, in the essential words upon which the decision is made to turn.

We think the plain intention of the legislature was to empower the district courts to render an independent judgment upon the law and the evidence, without reference to the inquiry whether the judgment of the justice was an entirety or otherwise.

The judgment of the court below is affirmed with costs.

*Affirmed.*