**ERIE METROPARKS BOARD OF COMMISSIONERS,**
Appellee and Cross–Appellant,

v.

**KEY TRUST COMPANY OF OHIO, N.A., et al., Appellants and Cross–Appellees.**

[Cite as *Erie Metroparks Bd. of Commrs. v. Key Trust
Co. of Ohio, N.A.* (2001), 145 Ohio App.3d 782.]

Court of Appeals of Ohio,
Sixth District, Erie County.

No. E–00–068.

Decided Sept. 14, 2001.

*Abraham Lieberman* and *Dennis M. O'Toole,* for appellee and cross-appellant.

*D. Jeffery Rengel, Thomas R. Lucas, Anthony Logan* and *Peggy Kirk Hall,* for appellants and cross-appellees.

SHERCK, Judge.

This is an appeal from a declaratory judgment issued by the Erie County Court of Common Pleas in a property dispute. Because the trial court's determination concerning the scope of the lease in question was proper, we affirm that portion of the court's decision. However, with respect to the court's determination that a prior breach of the terms of the lease rendered it void, we reverse.

In 1827, the Ohio General Assembly chartered the Milan Canal Company to construct and operate a canal from Milan, Ohio to Lake Erie. In due course, the canal company acquired land and dug a canal between Milan and "Lock 1," located where the navigable portion of the Huron River intersected the canal.

In 1881, the Milan Canal Company leased a one-hundred-fifty-foot-wide corridor through its property to the Wheeling and Lake Erie Rail Road Company, upon which to construct and operate a railroad. The lease was for ninety-nine years, renewable "forever." The lease required an annual rental fee of $50 and also provided that "on the failure of said Lessee * * * to so maintain and operate said Rail Road for public transportation and travel and on the abandonment thereof for railway purposes or on the failure for Six months to pay said annual rental of ($50) Fifty Dollars to the said Lessor after the same became due and payable these presents shall become void and the said real estate shall revert to the said Lessor the Milan Canal Company * * *."

It is undisputed that during the next one hundred years, the railroad, in one corporate guise or another,[1] maintained and operated a line on the leased corridor. In 1979, the railroad's lease was renewed for another ninety-nine years. In 1995, the Wheeling and Lake Erie Railway Company sold the lease to appellee and cross-appellant, Board of Commissioners, Erie Metroparks ("appellee"). Appellee intended to convert the property to a recreational hiking/bicycling trail.

In 1904, the Milan Canal Company was dissolved and its assets purchased by Stephen Lockwood. Stephen Lockwood's interests in the property eventually devolved to the testamentary trust of Verna Lockwood Williams and its trustee, Key Trust Company of Ohio. Following the purchase of the railroad's lease interest by appellee, a dispute arose between the trust and appellee concerning the continued validity of the lease.

On September 30, 1999, appellee initiated a declaratory judgment action against the Lockwood Williams trust. Appellee sought a declaration that the 1881 lease remains in effect, that the property may be properly used for a recreational trail, and that the scope of the lease be determined. The trust answered appellee's complaint, denying the validity of the lease and counterclaiming for a quiet title.

During the pendency of this case, the Lockwood Williams trust sold its interest in the disputed land to appellant and cross-appellee Buffalo Prairie, Ltd. Buffalo

---

1. The Wheeling and Lake Erie Rail Road Company was eventually absorbed by the Norfolk and Western Rail Company, which was merged into the Norfolk Southern Company. In 1990, the Norfolk Southern assigned its interest in the lease at issue to the Wheeling and Lake Erie Railway Company.

Prairie, in turn, began to convey portions of the land at issue to adjacent property owners. With this development, appellee amended its complaint to include not only the Lockwood Williams trust, but Buffalo Prairie and thirty-two named adjacent property owners ("appellants").[2]

This matter then proceeded to a bench trial. At the trial, appellants presented evidence that at the time appellee acquired its interest in the property, the railroad had been several years delinquent in paying its rent. Appellants also presented evidence that rail traffic on the line had ceased in the mid–1980s and that the track and the railroad infrastructure had been allowed to deteriorate since then. Indeed, the railroad had years previously filed a notice of route abandonment with the former Interstate Commerce Commission. Appellants argued that this behavior constituted a failure to maintain the property, an abandonment of the property for "railway purposes," and a default in rent. Appellants asserted that such multiple breaches of the lease caused the lease to become "void." The real estate should, therefore, "revert" to appellants as successors of the Milan Canal Company.

Appellee responded with testimony that both the railroad and appellee attempted to remedy the rent default but that the Lockwood Williams trust had rejected the tender. As far as abandonment was concerned, appellee pointed out that "abandonment" is governed by Ohio property law, not federal transportation policy. Moreover, it was undisputed that neither the trust, nor anyone else, had made a demand for rent or performance of any other term of the lease. Appellee argued that under the common law of leases, such a demand is essential before any default may be declared.

Alternatively, appellee argued that even if it were determined that the 1881 lease was void, not all of the appellants were entitled to a quiet title. This is so, according to appellee, because the Milan Canal Company did not have clear title to the full length of the canal. The 1881 lease described a one-hundred-fifty-foot corridor along the full length of the canal but conveyed only that portion "owned by said Milan Canal Company." At trial, evidence showed that, in the disputed area, the canal company was deeded land only from Kneeland Townsend and Ebeneser Merry. Since the canal company could lease to the railroad only so much as it owned, appellee asserted that the land at issue should be confined to that portion once owned by Townsend and Merry—a section of land substantially less than which appellants claim.

---

2. At the same time, Buffalo Prairie initiated a forcible entry and detainer action against appellee in the Erie County Court. The county court, however, dismissed the matter and deferred to this case to determine the proper title to the disputed land.

At the conclusion of the trial, the court found that the railroad had materially breached the terms of the lease by failing to promptly pay rent and that it had abandoned the property for purposes of operating a railroad. By the court's interpretation, the lease then became void on its own terms. Consequently, the railroad's conveyance to appellee was ineffective.

Concerning the scope of the lease, the court found that the canal company obtained land only from Townsend and Merry and, consequently, set the boundaries of the land derived from the canal company as extending from the canal basin in Milan to "Lock 1," where the canal joins the Huron River.

From this judgment, appellants now bring this appeal, setting forth the following six assignments of error:

"I. The trial court erred when it allowed evidence refuting lessor-appellants' title to the leased property in a declaratory judgment action seeking to determine lease validity.

"II. The trial court abused its discretion in allowing appellee to try claims not raised in its amended complaint over appellants' objections.

"III. The trial court erred in reforming the lease property description where intent of the parties is presumed to reside in the lease language and the court found the lease unambiguous.

"IV. The trial court correctly decided that the lease was breached before assignment of lessee's interest to plaintiff-appellee resulting in reversion to lessor-appellant but erred when it then reformed the leased property without clear and convincing evidence of intent and mutual mistake of fact by both original signatories to the lease.

"V. The trial court erred, as a matter of law, when it reformed the leased property without evidence of the original parties' conduct, course of dealings between them and method of handling the transaction in question.

"VI. The judgment of the trial court regarding the property description was against the manifest weight of the evidence."

Appellee cross-appeals with the following seven assignments of error:

"I. The trial court committed prejudicial error in failing to rule that the defendants acquired no interest in the parkway from Key Trust.

"II. The trial court committed prejudicial error in failing to rule that none of the parkway constitutes leased property.

"III. The trial court committed prejudicial error in holding that the lease at issue had terminated because the leased property was not being used for the purposes required by the lease.

"IV. The trial court committed prejudicial error by failing to adequately consider principles of equity in its determination that the lease at issue had terminated.

"V. The trial court committed prejudicial error by failing to adequately consider the doctrines of estoppel and waiver in its determination that the lease at issue had terminated.

"VI. Because the lessors under the lease had not demanded payment of the rent, the trial court committed prejudicial error in its determination that the lease at issue had terminated.

"VII. Because the lessors under the lease had not demanded performance of the lease obligations, the trial court committed prejudicial error in its determination that the lease at issue had terminated."

I

All of appellants' assignments of error ultimately attack the trial court's judgment limiting the leased property to Milan Canal Company lands obtained from Ebeneser Merry and Kneeland Townsend. None of these assignments of error is well taken.

In their third, fourth, and fifth assignments of error, appellants claim that the trial court, for various reasons, erred in reforming the lease agreement. The assignments are fallacious in their premise. Reformation of a contract is an equitable remedy whereby a court modifies an instrument that, due to a mutual mistake of the original parties, does not reflect the intent of those parties. *Mason v. Swartz* (1991), 76 Ohio App.3d 43, 50, 600 N.E.2d 1121, citing *Greenfield v. Aetna Cas. & Sur. Co.* (1944), 75 Ohio App. 122, 128, 30 O.O. 427, 61 N.E.2d 226.

Although the metes and bounds description contained in the 1881 lease describes a one-hundred-fifty-foot corridor for the full length of the canal, the lease limits the conveyance to property "owned by" the canal company. The trial record shows that the Milan Canal Company acquired property only from Townsend and Merry. The trial court ruled that this property alone was the subject of the lease. Consequently, the court never modified the 1881 lease. Since there was no reformation of the lease, appellants' arguments concerning an improper reformation of the contract are without merit. Accordingly, appellants' Assignments of Error Nos. III, IV, and V are not well taken.

The same holds true for appellants' manifest-weight argument contained in their sixth assignment of error. The only competent, credible evidence presented at trial was that the canal company obtained property solely from

Townsend and Merry. On such evidence, we cannot say that the trial court's decision to limit the lease to such property was unsupported by the evidence. See *Vogel v. Wells* (1991), 57 Ohio St.3d 91, 96, 566 N.E.2d 154. Accordingly, appellants' sixth assignment of error is not well taken.

■ With respect to appellants' first and second assignments of error, appellants maintain that the trial court should not have permitted appellee's attack on their title, since the complaint contained no notice of a claim against appellants' title. Again, appellants mischaracterize the proceedings. Appellee asked for a declaration of rights under the 1881 lease. The lease limited its conveyance to property owned by the canal company. Thus, a determination of what property the canal company owned was in order. The exercise was not an attack on appellants' title; rather, it was necessary to determine the scope of the lease. Accordingly, appellants' first and second assignments of error are not well taken.

## II

By way of seven cross-assignments of error, appellee contends that, for one reason or another, the trial court erred when it concluded that the railroad breached the 1881 lease, causing the interest conveyed therein to revert to appellants' predecessor in interest.

The trial court concluded that the railroad breached the lease in two ways: (1) "nonpayment of rent for a period of more than six months," and (2) "because the property was abandoned for the purpose of operating a railroad."

■ It is axiomatic in Ohio jurisprudence that the law abhors a forfeiture. *Wheatstone Ceramics Corp. v. Turner* (1986), 32 Ohio App.3d 21, 23, 513 N.E.2d 348, citing *Ensel v. Lumber Ins. Co. of New York* (1913), 88 Ohio St. 269, 281, 102 N.E. 955. With this axiom in mind, we must examine whether circumstances exist that would warrant the forfeiture of the property rights conveyed in this century-old document.

### A. Failure to Pay Rent

■ At trial, it was undisputed that, at some point between 1979 and 1995, the railroad failed to render to the Lockwood Williams trust the annual $50 rent payment provided for in the 1881 lease. The evidence at trial would also suggest that at some point, without any demand from the trust, the railroad discovered its omission and attempted to bring its payments current. It was undisputed that, after the lease was transferred to appellee, appellee sent a check to the trust to cure any arrearage. The trust, however, rejected the tender.

In its sixth assignment of error, appellee contends that the trust's failure to demand the rent payment negates its ability (or its successor's ability) to declare

a forfeiture. Moreover, according to appellee, both the railroad and appellee stood ready and able to cure any default had the trust made such a demand.

Appellants respond that the railroad knew that it had not paid its rent and that this was sufficient notice. Moreover, according to appellants, by the clear terms of the 1881 lease agreement, the contract became automatically void on the failure of the railroad to pay its annual rent more than six months beyond its due date.

■ Contracts incorporate the law applicable at the time of their creation. 11 Williston on Contracts (1999) 203, Section 30.19. The common law of Ohio at the time the 1881 lease was executed was stated in paragraph one of the syllabus of *Smith v. Whitbeck* (1862), 13 Ohio St. 471, 1862 WL 39, which provided:

"In order to show a forfeiture of an unexpired term of a leasehold estate, for nonpayment of rent, the lessor must prove demand of payment of the lessee when due." [3]

The 1881 lease contained no express waiver of this common-law requirement, and the evidence was unrefuted that no demand was made in this instance. Since no forfeiture may be had absent demand, the railroad's lapse in its annual rent payment does not constitute an irreparable breach of the lease. Accordingly, appellee's sixth assignment of error is well taken.

## B. Abandonment

■ In its seventh assignment of error, appellee argues that with respect to a forfeiture on other lease conditions, there should also be imposed a requirement of a demand for performance prior to a breach declaration.

Although there is some authority in support of imposing such a requirement, see 1 Restatement of Law, *infra*, at 495–501, Section 13.1 and Comment *h*, appellee directs us to no Ohio authority that expressly imposes such a require-ment. Therefore, we will examine the merits of the purported nonmonetary breach.

The lease provision at issue provides that on the failure of the lessee to "maintain and operate said Rail Road for public transportation and travel and on the abandonment thereof for railway purposes" the lease shall become void. For a breach of these provisions to occur, the lessee must have (1) ceased the

---

**3.** The 1979 lease renewal did not change the terms of the agreement. The "demand" requirement is in conformity with the common law of most other states, see *Bates & Springer, Inc. v. Nay* (Cuyahoga App.1963), 91 Ohio Law Abs. 425, 187 N.E.2d 415, citing 31 A.L.R.2d 376, and remains today in Ohio landlord-tenant relations that are not superseded by statute. *Id.* See, also, 1 Restatement of the Law 2d, Property (1977) 384, Section 12.1(2)(b).

maintenance and operation of the property for public transportation and travel, and (2) abandoned its use for "railway purposes."

We are persuaded by the reasoning expressed in *Rieger v. Penn Cent. Corp.* (May 21, 1985), Greene App. No. 85–CA–11, unreported, 1985 WL 7919, on both issues. Although *Rieger* dealt with the transfer of a prescriptive easement of a railroad right-of-way to the state for a recreational trail, its logic is applicable to this lease. To us, it is reasonable and, indeed, *Rieger* holds that the transformation of a railroad right-of-way to a recreational trail is an equivalent and permissible use of such property. Both serve a public purpose related to public transportation and travel. *Id.,* citing *Minnesota Dept. of Wildlife Preservation v. Minnesota Dept. of Natural Resources* (Minn.1983), 329 N.W.2d 543, 546–547, certiorari denied (1983), 463 U.S. 1209, 103 S.Ct. 3540, 77 L.Ed.2d 1390. Consequently, the proposed use of this property is consistent with the original lease. Moreover, we cannot say that the transitional period between the two uses is so great as to constitute a failure to "maintain and operate" such property for such uses so as to be deemed a breach. This is especially so absent a demand from the lessor for performance.

■ With respect to the abandonment of the property for railroad purposes, again we turn to *Rieger,* which, citing *Schenck v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1919), 11 Ohio App. 164, 167, 1919 WL 890, holds that to constitute abandonment of a railroad right-of-way there must be a "nonuser together with an intention to abandon." The intent portion must be shown by unequivocal and decisive acts indicative of abandonment. *Id.;* see, also, *Roby v. New York Cent. Hudson River RR. Co.* (1894), 142 N.Y. 176, 181, 36 N.E. 1053.

In this case, the trial court appears to have found dispositive the fact that the railroad filed a notice of "abandonment" with the former Interstate Commerce Commission. We disagree with this interpretation. While such a regulatory filing may constitute evidence of an intent to abandon for state property-law purposes, it is only evidence. Contradictory to this filing was the undisputed evidence that when Norfolk Southern transferred this spur to Wheeling and Lake Erie, Norfolk Southern reserved a portion of the corridor for the future installation of fiber-optic cable. Moreover, Wheeling's grant to appellee reserves a future right to construct and operate another rail line in the corridor. Both of these acts constitute "railway purposes," and both indicate an intention to pursue future use of the property for such purposes. Far from the "unequivocal and decisive" acts indicative of abandonment necessary to prove an intent to abandon, these reservations are antithetical to such an intent.

Since there has been no demonstrated breach of the "purposes" provision of the lease, the trial court erred in determining that the lease at issue was invalid.

Accordingly, appellee's first, second, and third assignments of error are well taken. Assignments of Error Nos. IV, V, and VII are moot.

On consideration whereof, the judgment of the Erie County Court of Common Pleas is reversed in part. This matter is remanded to said court for further proceedings consistent with this decision. Costs to appellants.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

MARK L. PIETRYKOWSKI, P.J., and PETER M. HANDWORK, J., concur.