DECISION AND JUDGMENT ENTRY
{¶ 1} This is a consolidated appeal from two judgments of the Erie County Court of Common Pleas in a property dispute. The first judgment, entered February 21, 2002, denied the motion to intervene filed by appellant Wikel Farms, Ltd. The second judgment appealed from, entered March 1, 2002 upon remand from this court, determined the validity of the lease in question. On March 29, 2002, this court sua sponte ordered that the two appeals be consolidated under E-02-009. For the reasons that follow, this court affirms the judgments of the trial court.
 {¶ 2} Appellants Buffalo Prairie, Ltd., et al. set forth the following assignments of error:
 {¶ 3} "1. The trial court's Entry establishing the description of the leased property is directly contrary to this Court's decision in Board of Commissioners v. Key Trust 135 Ohio App.3d 787.
 {¶ 4} "2. The trial court abused its discretion by adopting findings of fact which did not address the issues raised in Defendants' Answer and Counterclaim."
 {¶ 5} Appellant Wikel Farms, Ltd. sets forth the following assignment of error:
 {¶ 6} "The trial court erred and abused its discretion by denying the renewed motion of Wikel Farms, Ltd. to intervene."
 {¶ 7} The background necessary for a thorough understanding of this appeal is as follows. In 1827, the Ohio General Assembly chartered the Milan Canal Company to construct and operate a canal from Milan, Ohio, to Lake Erie. The canal company acquired land from Ebeneser Merry and Kneeland Townsend and dug a canal between Milan and "Lock 1," located where the navigable portion of the Huron River intersected the canal.
 {¶ 8} In 1881, the Milan Canal Company leased a 150-foot wide corridor through its property to the Wheeling and Lake Erie Rail Road Company. The lease was for 99 years, renewable "forever," and called for an annual rent of $50. The lease also provided that "on the failure of said Lessee * * * to so maintain and operate said Rail Road for public transportation and travel and on the abandonment thereof for railway purposes or on the failure for Six months to pay said annual rental of ($50) Fifty dollars to the said Lessor after the same became due and payable these presents shall become void and the said real estate shall revert to the said Lessor the Milan Canal Company * * *."
 {¶ 9} It is undisputed that during the next 100 years, the railroad and its successor railroad companies maintained and operated a line on the leased corridor.[1] In 1979, the lease was renewed for another 99 years. In October 1995, the Wheeling and Lake Erie Railway Company transferred its interest in the leased property to appellee Board of Commissioners, Erie Metroparks ("Metroparks"), which intended to convert the property to a recreational hiking and bicycling trail.
 {¶ 10} In 1904, the Milan Canal Company was dissolved and its assets purchased by Stephen Lockwood. Lockwood's interest in the property eventually devolved to the testamentary trust of Verna Lockwood Williams and its trustee, Key Trust Company of Ohio. Following the purchase of the railroad's lease interest by Metroparks, a dispute arose between the trust and Metroparks concerning the continuing validity of the lease.
 {¶ 11} On September 30, 1999, Metroparks initiated a declaratory judgment action against the Williams trust. Metroparks sought a declaration that the 1881 lease remains in effect, that the property may be properly used for a recreational trail, and that the scope of the lease be determined. In its answer to the complaint, the trust denied the validity of the lease and counterclaimed for a quiet title.
 {¶ 12} During the pendency of the case in the trial court, the Williams trust sold its interest in the disputed land to appellant Buffalo Prairie, Ltd. Metroparks subsequently amended its complaint to include Buffalo Prairie and 32 named adjacent property owners to whom Buffalo Prairie had conveyed portions of the land at issue.
 {¶ 13} It is undisputed that at the time Metroparks acquired its interest in the property in October 1995, the railroad from which it had purchased the lease had fallen several years behind in paying the rent. In September 1995, the railroad tendered a check for $300 to Key Trust, but the payment was rejected. It was also undisputed that the trust never made a demand for the unpaid rent.
 {¶ 14} The matter proceeded to a bench trial, at the conclusion of which the court found that the railroad had materially breached the terms of the lease by failing to promptly pay the rent and that it had abandoned the property for purposes of operating a railroad, thereby rendering the lease void on its own terms. As a result, the railroad's conveyance to Metroparks was ineffective, the trial court held. As to the scope of the lease, the trial court found that the land subject to the lease consisted only of those parcels of land between the canal basin in Milan and the point where the canal joins the Huron River that had been conveyed by landowners Ebeneser Merry and Kneeland Townsend.
 {¶ 15} From this judgment, Buffalo Prairie, the lessor, and other landowners filed an appeal and Erie Metroparks, the lessee, filed a cross-appeal. Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio,N.A., et al. (2001), 145 Ohio App.3d 782. Buffalo Prairie's assignments of error attacked the trial court's judgment limiting the leased property only to Milan Canal Company lands obtained from Ebeneser Merry and Kneeland Townsend, claiming that the trial court improperly reformed the lease agreement. This court held that the trial court had not modified the 1881 lease and that the lower court's finding that the lease was limited to property obtained solely from Merry and Townsend was supported by the evidence. By way of its cross-appeal, Erie Metroparks contended that the trial court erred when it concluded that the railroad had breached the 1881 lease due to abandonment and nonpayment of rent. As to those arguments, this court found that the trial court had erred by determining that the lease was invalid since, absent any demand by the trust, the railroad's lapse in its rent payment did not constitute an irreparable breach of the lease. Accordingly, this court reversed the trial court's judgment finding that the lease was invalid and remanded the case for further proceedings. This court let stand the trial court's finding as to the scope of the leased property.
 {¶ 16} In its February 22, 2002 judgment entry on remand, the trial court ruled that the railroad had not abandoned the leased property and that the lease Metroparks purchased from the railroad is still in full force and effect. Although the issue was not before the trial court on remand, the court also made a finding as to the boundaries of the leased property. In so doing, the trial court found that the land owned by the Milan Canal Company at the time the lease was executed "lay within the boundaries of the Kneeland Townsend property and the Ebeneser Merry property."
 {¶ 17} In their first assignment of error, appellants Buffalo Prairie, et al. assert that the trial court's judgment entry on remand setting forth the boundaries of the leased property is directly contrary to that court's own finding in its original decision filed on November 7, 2000 and this court's September 14, 2001 decision on the first appeal. Appellants assert that this court and the trial court both found that the only two tracts of land subject to the Milan Canal lease, and therefore subject to the leasehold interests of Erie Metroparks, were two non-contiguous tracts conveyed by Ebeneser Merry and Kneeland Townsend. They further assert, however, that the trial court's judgment entry on remand erroneously describes the land subject to the lease to include a two-mile corridor that the courts previously have determined is not part of the leasehold.
 {¶ 18} This court has carefully examined the trial court's November 7, 2000 judgment entry, our own decision of September 14, 2001, and the trial court's February 22, 2002 judgment entry on remand. Despite appellants' assertion that the trial court's entry on remand was contrary to our September 2001 decision, we find that the descriptions of the leased property are identical in both of the trial court's entries.
 {¶ 19} Significantly, both entries define the property as encompassing only land previously owned by Merry and Townsend. As this court explained in its September 14, 2001 decision: "Although the metes and bounds description contained in the 1881 lease describes a one-hundred-fifty-foot corridor for the full length of the canal, the lease limits the conveyance to property `owned by' the canal company. The trial record shows that the Milan Canal Company acquired propertyonly from Townsend and Merry. The trial court ruled that this propertyalone was the subject of the lease. Consequently, the court never modified the 1881 lease. Since there was no reformation of the lease, appellants' arguments concerning an improper reformation of the contract are without merit. * * * [Emphasis added.]
 {¶ 20} "* * * The only competent, credible evidence presented at trial was that the canal company obtained property solely from Townsend and Merry. On such evidence, we cannot say that the trial court's decision to limit the lease to such property was unsupported by the evidence. * * *" Erie Metroparks Bd. of Commrs. v. Key Trust Co. ofOhio, N.A., supra, at 787-788.
 {¶ 21} Thus, this court affirmed the trial court's original determination that the leased property included only land obtained from Townsend and Merry. On remand, for reasons not apparent to this court, the trial court revisited the issue of the scope of the leased property. This was unnecessary since we had left undisturbed that portion of the November 2000 entry and remanded the case solely on the issue of the validity of the lease.
 {¶ 22} It has been emphasized in all three judgment entries that the leased property encompassed only land obtained from Townsend and Merry. There is no discrepancy as to that issue and the trial court's February 22, 2002 judgment entry did not contradict that finding as set forth in either of the two prior judgments.
 {¶ 23} Accordingly, appellant's first assignment of error is not well-taken.
 {¶ 24} In their second assignment of error, appellants assert that the trial court abused its discretion by adopting findings of fact on remand which did not address the issue of Metroparks' prior claim of adverse possession. In its November 7, 2000 decision, the trial court found that Metroparks did not acquire title to the leased property by adverse possession because it did not begin to occupy the property adversely until it went into default for nonpayment of rent in 1995. Since this court then found that the original lease was still in effect, the issue of adverse possession was irrelevant on remand, and there was no reason for the trial court to address the matter in its February 2, 2002 judgment entry. This argument is therefore without merit.
 {¶ 25} Appellants also argue that the trial court improperly authorized appellee to pay the rent to the clerk of courts until further notice. Appellants, however, misrepresent the trial court's order. In its February 22, 2002 judgment entry, the trial court stated that appellee had deposited with the clerk of courts the sum of $1,000, representing 13 years' past due rent plus future rent for seven years. The trial court ordered that the deposit should be released to the trust upon the trust's motion advising the court as to whom such rent is to be paid. Further, the trial court instructed appellants to keep appellee advised as to where future rent payments should be directed, and then ordered that if the trust did not notify Metroparks as to where to send the payments and to whom they should be directed, Metroparks should deposit future payments with the clerk of courts until further notice. This is a reasonable and appropriate order in light of the facts and the trial court did not err by so ordering. This argument is without merit.
 {¶ 26} Based on the foregoing, appellants' second assignment of error is not well-taken.
 {¶ 27} Finally, we must consider the appeal from the trial court's denial of the motion to intervene filed by Wikel Farms, Ltd. Wikel Farms, Ltd. contends that the tract of land it owns at the northern end of the canal is not included in the property covered by the lease and it sought to intervene for the sole purpose of contesting the northern boundary of the leased property.
 {¶ 28} Wikel Farms originally filed a motion to intervene on March 15, 2000, several months after Metroparks initiated its declaratory judgment action. The motion was not ruled on by the trial court prior to its November 7, 2000 decision. Wikel Farms renewed its motion to intervene on February 12, 2002, after this court's decision on the first appeal and while the case was pending in the trial court on remand. On February 21, 2002, the trial court summarily denied the motion to intervene.
 {¶ 29} A trial court's decision on a motion to intervene is reviewed pursuant to an abuse of discretion standard. Peterman v.Pataskata (1997), 122 Ohio App.3d 758. Abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1984), 5 Ohio St.3d 217, 219. In this case, appellant Wikel Farms wishes to intervene in order to contest one of the boundaries of the leased property. By the time Wikel Farms filed its renewed motion to intervene, however, the trial court's determination as to the scope of the leased property had been affirmed by this court. Accordingly, the trial court's judgment entry denying the motion to intervene was not unreasonable, arbitrary or unconscionable and therefore not an abuse of discretion.
 {¶ 30} Based on the foregoing, this court finds the sole assignment of error of appellant Wikel Farms, Ltd. not well-taken.
 {¶ 31} Upon consideration whereof, the judgments of the Erie County Court of Common Pleas are affirmed. Costs of this appeal are assessed to appellants equally.
JUDGMENTS AFFIRMED.
Peter M. Handwork, J., James R. Sherck, J., and Richard W. Knepper,J., CONCUR.
[1] The Wheeling and Lake Erie Rail Road Company was eventually absorbed by the Norfolk and Western Rail Company, which was merged into the Norfolk Southern Company. In 1990, the Norfolk Southern assigned its interest in the lease at issue to the Wheeling and Lake Erie Railway Company.