THE STATE EX REL. COLES ET AL. *v.* GRANVILLE, DIR.-SECY., ET AL.

## [Cite as *State ex rel. Coles v. Granville,* 116 Ohio St.3d 231, 2007-Ohio-6057.]

(No. 2006–1259—Submitted September 11, 2007—Decided November 20, 2007.)

**Per Curiam.**

{¶ 1} This is an original action for a writ of mandamus to compel a park district's board of commissioners to commence appropriation proceedings for property allegedly seized and occupied by the district. Because relators have established that by constructing and using a recreational trail the board has taken the property, we grant a writ of mandamus to compel the board to begin an appropriation proceeding to compensate relators for the taking.

### The Canal Company and the Railroad Lease

{¶ 2} In 1827, the General Assembly chartered the Milan Canal Company ("the canal company") to construct and operate a canal from Milan, Ohio, to the Huron River. Noncontiguous tracts of land from Ebeneser Merry and Kneeland Townsend were acquired by the canal company as part of the canal corridor. In 1881, the canal company entered into a 99–year lease with the Wheeling & Lake Erie Railway Company for a 150–foot–wide right of way to construct and operate a railroad. The lease was renewed in 1980 for another 99 years.

{¶ 3} The canal company was dissolved in 1904, and its property interests devolved to a testamentary trust and its trustee, Key Trust Company of Ohio. Rail traffic on the leased property ceased in the 1980s, and portions of the rail line were paved.  In 1995, the lessee's successor quitclaimed its interests to respondent Board of Commissioners of Erie MetroParks, a park district created pursuant to R.C. 1545.01 et seq.  The board acquired the property to build a recreational trail.

### Coles v. Wheeling & Lake Erie Ry. Co., Erie C.P. No. 97–CV–296

{¶ 4} In 1986, relators Edwin and Lisa Coles obtained a portion of the property upon which Erie MetroParks intended to build the recreational trail.  In the deed, however, the sellers excepted "a 66 foot wide parcel [of approximately .80 acres] now or formerly owned by" one of the successors in interest to the lessee of the railroad lease.

{¶ 5} In 1997, the Coleses filed an action in the Erie County Court of Common Pleas for a judgment declaring that they have title to the property generally specified in the 1986 deed, including the 66–foot–wide parcel.  Erie MetroParks filed a motion to dismiss the Coleses' action on grounds that because the parcel was specifically excepted from the deed, the Coleses were not real parties in interest.  The common pleas court granted the motion and dismissed the case. No appeal was taken from the 1998 judgment.

### The Key Trust Litigation

{¶ 6} In 1999, the Erie MetroParks Board of Commissioners initiated a declaratory-judgment action in the Erie County Court of Common Pleas against Key Trust.  While the case was pending, Key Trust conveyed the property formerly owned by the canal company to relators the Coleses and Buffalo Prairie, Ltd., a limited liability company of which Edwin Coles is the president.  The deed designated the parcels conveyed as "Farm Property/Milan Canal Parcel" and "House Lot/Milan Canal Parcel."  The Coleses and Buffalo Prairie then conveyed sections of this property to the other relators—Isolated Ventures, Ltd., another limited liability company of which Edwin Coles serves as president, Vincent Otrusina,[1] Robert C. Bickley, and Warren R. Jones.

{¶ 7} In 2000, the board of park commissioners filed an amended complaint for declaratory relief, which added those relators and other property owners who may have received Key Trust's interests in the former canal company property. The board sought a judgment declaring that the railroad lease is in full force and effect, that the board is the lessee of the property, that the defendants' rights are subject to the board's rights under the lease, that the board is entitled to the sole

---

1.   Otrusina later died, and the executor of his estate is a relator in this case.

and exclusive occupancy of the property, and that the lease permits the board to improve and use the property as a recreational trail. The board alleged that it was improving the property for use as a recreational trail and that Key Trust had attempted to terminate the lease.

{¶ 8} The defendant property owners submitted an answer and a counterclaim. In reply, the board claimed that it has the right to possess the land formerly actively used by the railroad not only through the railroad lease but through property it acquired by the quitclaim deed from the original lessee.

{¶ 9} In November 2000, the common pleas court entered a judgment finding that the canal company—predecessor in title to Key Trust and relators—had acquired its real property interests solely from the Merry and Townsend deeds, that the canal property "consisted of a roughly three mile long corridor of property the northern terminus being known as Lock No. 1, which was located where the Milan Canal joined the Huron River on property now owned by Wikel Farms, Ltd., just north of Mason Road, in Section 2, Milan Township, Erie County, Ohio," and that the only property owned by the canal company at the time the railroad lease was executed "lay within the boundaries of the Kneeland Townsend property and the Ebeneser Merry property, neither of which lay north of Lock No. 1." The court nevertheless concluded that the lease had been breached by a predecessor in interest to the board of park commissioners for nonpayment of rent and abandonment of the railroad use, which rendered the lease void.

{¶ 10} On appeal, the court of appeals affirmed the judgment of the trial court insofar as it found that the railroad lease was limited to the land obtained by the canal company from Merry and Townsend. *Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio, N.A.* (2001), 145 Ohio App.3d 782, 787–788, 764 N.E.2d 509. The court of appeals further held that the trial court had erred by concluding that the board's predecessor in interest had breached the railroad lease. Id. at 790, 764 N.E.2d 509. The court of appeals reversed that portion of the trial court's judgment invalidating the lease and remanded the cause for further proceedings. Id. at 791, 764 N.E.2d 509. We did not accept a discretionary appeal from the court of appeals judgment. *Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio, N.A.* (2002), 94 Ohio St.3d 1431, 761 N.E.2d 47.

{¶ 11} On remand, the common pleas court held that the lessee had not abandoned the leased property, that the lease is in full force and effect, that the board of park commissioners is the current lessee and the holder of the lessee's rights under the lease, that the board is entitled to the sole occupancy and use of the leased property, that the rights of the defendants—including relators—are subject to the board's rights under the lease, and that the lease permitted the

board to improve and use the leased property as a parkway or recreational trail. The trial court further concluded that the extent of the leased property was limited to the Merry and Townsend tracts conveyed to the canal company:

{¶ 12} "[The extent of the leased property is] [a]ll those lands within a one hundred fifty (150) foot wide corridor conveyed to the Milan Canal Company by Kneeland Townsend and Ebeneser Merry by instruments dated May 10, 1838 and April 21, 1838, respectively * * *, which lands have a northerly boundary at Lock No. 1 of the old Milan Canal, which lock was located immediately north of Mason Road on lands now owned by Wikel Farms, Ltd. at or near the intersection of the Milan Canal with the Huron River, and extending southerly to the Canal's turning basin in the City of Milan, Ohio."

{¶ 13} In an appeal from the trial court's judgment on remand, the defendants, including a majority of relators, asserted that the portion of the judgment describing the leased property as extending from north of Mason Road south to the canal basin in Milan differed from the previous description, which restricted the leased property to the Merry and Townsend parcels. The court of appeals rejected this contention by holding that the judgment on remand did not contradict the finding in the previous judgment entries "that the leased property encompassed only land obtained from Townsend and Merry." *Erie Metroparks Bd. of Commrs. v. Key Trust Co. of Ohio,* Erie App. Nos. E–02–009 and E–02–011, 2002-Ohio-4827, 2002 WL 31054032, ¶ 22. The court of appeals affirmed the trial court's judgment.

## Actions of the Board of Park Commissioners and the Location of Relators' Property

{¶ 14} Shortly after the Coleses received their farm and home parcels from Key Trust in 1999, they received a letter from respondent Jonathan R. Granville, the director-secretary of Erie MetroParks. Granville stated that the board was interested in acquiring the Coleses' ownership interests in the canal and railroad corridor. In 2000, the board adopted two resolutions to authorize the acquisition of fee-simple title to the property by instituting appropriation proceedings.

{¶ 15} The Coleses' home parcel and the Otrusina estate's property lie north of Mason Road. The Coleses' farm parcel and relators' remaining properties are south of Mason Road. None of relators' property is within the boundaries of the Merry or Townsend tracts.

{¶ 16} The board of park commissioners built a recreational trail over the former railroad line, which relators assert is part of their property.

## Federal Litigation

{¶ 17} In 2003, relators and Wikel Farms, Ltd. filed a civil-rights action in federal district court under Sections 1983, 1985(2), and 1985(3), Title 42,

U.S.Code, against the board and its director-secretary for violations of their rights under the Fifth and Fourteenth Amendments to the United States Constitution. See *Coles v. Granville* (Jan. 24, 2005), N.D.Ohio No. 3:03 CV 7595, 2005 WL 139137. Relators alleged that in developing the recreational trail, respondents asserted entitlement to property beyond that found to be covered by the railroad lease in the *Key Trust* cases. The federal district court dismissed the case and determined that as a federal court, it was barred from reviewing the state court's finding that the property was covered by the lease. Id. at *4. On appeal, the United States Court of Appeals for the Sixth Circuit affirmed, holding that relators' causes of action for unconstitutional takings were not ripe for federal review when relators had not brought a state action in mandamus to compel appropriation proceedings. *Coles v. Granville* (C.A.6, 2006), 448 F.3d 853.

### Mandamus Case

{¶ 18} Shortly after the Sixth Circuit's decision in *Coles*, 448 F.3d 853, relators filed this action for a writ of mandamus to compel the board of park commissioners and its director-secretary to either (1) commence an appropriation proceeding to compensate relators for the board's taking of their property or (2) relinquish the seized property and direct the park district not to file an eminent-domain action to appropriate relators' property. This court granted an alternative writ on relators' appropriation claim and dismissed relators' alternate claim to compel respondents to relinquish the property. 113 Ohio St.3d 1485, 2007-Ohio-1986, 865 N.E.2d 910. See, e.g., *State ex rel. Grendell v. Davidson* (1999), 86 Ohio St.3d 629, 634, 716 N.E.2d 704 ("if the allegations of a complaint for a writ of mandamus indicate that the real objects sought are a declaratory judgment and a prohibitory injunction, the complaint does not state a cause of action in mandamus and must be dismissed for want of jurisdiction"). Relators' alternate mandamus claim suggested that the real objects sought were a declaratory judgment—that park districts established after April 16, 1920, lack the power to acquire property by appropriation—and a prohibitory injunction to prevent the board of park commissioners from continuing to occupy relators' property and from filing an appropriation action.

{¶ 19} The parties have now presented evidence and briefs on relators' remaining mandamus claim concerning appropriation. Because they have also filed a notice stipulating to the dismissal of the claim against the director-secretary under Civ.R. 41(A)(1)(b), the claim now solely concerns the board of park commissioners.

### Motions to Take Judicial Notice

{¶ 20} On the same date that their evidence was due, the parties filed motions for the court to take judicial notice of certain filings in the *Key Trust* litigation,

including the common pleas court and court of appeals judgments, which are attached to their motions. Because the parties agree that the submitted documents should be part of the court's record in this original action, we grant the motions. Cf. *Stutzka v. McCarville* (C.A.8, 2005), 420 F.3d 757, 761, fn. 2 (court takes judicial notice of judicial opinions and public records on motion to enlarge record on appeal); *Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.* (C.A.2, 1992), 969 F.2d 1384, 1388, quoting *Kramer v. Time Warner, Inc.* (C.A.2, 1991), 937 F.2d 767, 774 ("A court may take judicial notice of a document filed in another court 'not for the truth of the matters asserted in the other litigation, but rather to establish the fact of such litigation and related filings' ").

## Mandamus as a Remedy to Compel Appropriation Proceedings

{¶ 21} "The United States and Ohio Constitutions guarantee that private property shall not be taken for public use without just compensation." *State ex rel. Shemo v. Mayfield Hts.* (2002), 95 Ohio St.3d 59, 63, 765 N.E.2d 345, judgment modified in part on other grounds, 96 Ohio St.3d 379, 2002-Ohio-4905, 775 N.E.2d 493; Fifth and Fourteenth Amendments to the United States Constitution; Section 19, Article I, Ohio Constitution. "Mandamus is the appropriate action to compel public authorities to institute appropriation proceedings where an involuntary taking of private property is alleged." *Shemo*, 95 Ohio St.3d at 63, 765 N.E.2d 345; see, also, *State ex rel. Duncan v. Mentor City Council*, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, ¶ 11.

{¶ 22} This case involves a classic appropriation claim alleging an actual physical taking of relators' real property. See *Lingle v. Chevron U.S.A., Inc.* (2005), 544 U.S. 528, 537, 125 S.Ct. 2074, 161 L.Ed.2d 876 ("The paradigmatic taking requiring just compensation is a direct government appropriation or physical invasion of private property"); *State ex rel. OTR v. Columbus* (1996), 76 Ohio St.3d 203, 206, 667 N.E.2d 8 ("the actual physical taking of real property" is a sufficient interference with a property right to constitute a compensable taking).

## Authority of Board of Park Commissioners to Appropriate Real Property

{¶ 23} In their alternate mandamus claim, relators argued in part that the board of park commissioners lacks authority to acquire property by appropriation because the Erie MetroParks District was established after April 16, 1920. Although we dismissed that alternate claim because it sought relief in the nature of a declaratory judgment and prohibitory injunction, an analysis of this argument is warranted because if it is correct, relators' appropriation claim must fail.

{¶ 24} R.C. 1545.11 authorizes boards of park commissioners to acquire real property by appropriation, specifies that appropriation proceedings shall be conducted in the manner set forth in the general appropriation provisions of R.C.

163.01 to 163.22, and concludes with a sentence providing, "This section applies to districts created prior to April 16, 1920." Relators contended in their alternate mandamus claim that because the Erie MetroParks District was established *after* April 16, 1920, the board lacks authority to appropriate property.

{¶ 25} R.C. 1545.11, however, authorizes all boards of park commissioners to appropriate property, regardless of the date of any park district's creation. As noted by the attorney general, the legislative history of R.C. 1545.11 supports this holding:

{¶ 26} "From this legislative history, it is apparent that the last sentence of what is now R.C. 1545.11 was originally added to G.C. 2976–7 in 1920 to ensure that park districts created prior to the 1920 effective date of H.B. No. 387 enjoyed the broader powers conferred upon boards of park commissioners thereunder. This statutory provision was, of course, necessitated by the historic presumption applied by the courts of this state that the legislature intends statutes enacted by it to operate prospectively rather than retroactively. It is apparent, therefore, that the change in language in 1953 which set forth the specific date of April 16, 1920, in no way altered the operation of this final provision as one which included districts created both before and after that date. Thus, I am of the opinion that the terms of R.C. 1545.11 authorize boards of park commissioners created both before and after April 16, 1920, to acquire lands as specified therein." (Citations omitted.) 1978 Ohio Atty.Gen.Ops. No. 78–045; see, also, 1983 Ohio Atty.Gen.Ops. No. 83–020, syllabus ("R.C. 1545.11 applies to all park districts, regardless of the date of their creation").

{¶ 27} A court of appeals reached a similar conclusion in *Clark Cty. Bd. of Park Commrs. v. Dunkle,* Clark App. No. 2002 CA 93, 2003-Ohio-5400, 2003 WL 22318553, ¶ 15:

{¶ 28} "In our opinion, it is much more sensible to interpret the final sentence of R.C. 1545.11 to express a desire to make the provisions set forth therein retroactive than to create an arbitrary distinction that would give some park districts, but not others, the power to acquire lands through appropriation. We see no principled reason for such disparate treatment, and there is no evidence of such an intention in the legislative history. Moreover, insofar as R.C. 1545.11 encompasses the acquisition of land by gift or purchase as well as by eminent domain, the [property owners'] interpretation of the provision would deprive park districts created after April 16, 1920 of virtually all means of acquiring land."

{¶ 29} Therefore, the board of park commissioners is authorized under R.C. 1545.11 to appropriate property for the construction and use of a recreational trail, and a mandamus claim to compel the board to commence an appropriation proceeding is viable as long as relators establish an involuntary taking of their property by the board.

## Pending Civil Action Does Not Bar Mandamus Action

{¶ 30} On the same date that relators filed this mandamus action, they filed a civil action for trespass and slander of title against the board of park commissioners and its director-secretary in the Erie County Court of Common Pleas. In that case, relators allege that the board trespassed on their property and made slanderous claims of title to the property. Relators sought damages and a permanent injunction.

{¶ 31} The board suggests that relators' civil suit bars their entitlement to the requested writ of mandamus. This suggestion is erroneous.

{¶ 32} As noted previously, we have consistently held that mandamus is the appropriate action to compel public authorities to commence appropriation proceedings for an involuntary taking of private property. *State ex rel. Preschool Dev., Ltd. v. Springboro,* 99 Ohio St.3d 347, 2003-Ohio-3999, 792 N.E.2d 721, ¶ 12. The pending civil action does not afford a complete remedy to relators because it cannot compel the board of public commissioners to commence appropriation proceedings for the property relators claim has been taken by the board. Cf. *State ex rel. Fattlar v. Boyle* (1998), 83 Ohio St.3d 123, 125, 698 N.E.2d 987 (prior declaratory judgment action did not bar mandamus action when it would not provide a complete remedy to relator).

{¶ 33} Therefore, the pending civil action does not bar relators' mandamus claim.

## Mandamus to Compel Appropriation Proceeding for Property South of Mason Road: Res Judicata Effect of *Key Trust* Litigation

{¶ 34} Relators and respondents both claim that the *Key Trust* litigation is res judicata and establishes their interest in the property south of Mason Road in the canal corridor.

{¶ 35} "Under the doctrine of res judicata, '[a] valid, final judgment rendered upon the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.' " *State ex rel. Denton v. Bedinghaus,* 98 Ohio St.3d 298, 2003-Ohio-861, 784 N.E.2d 99, ¶ 14, quoting *Grava v. Parkman Twp.* (1995), 73 Ohio St.3d 379, 653 N.E.2d 226, syllabus.

{¶ 36} In general, res judicata bars all claims that were or *might have been* litigated in the first lawsuit. *State ex rel. Mora v. Wilkinson,* 105 Ohio St.3d 272, 2005-Ohio-1509, 824 N.E.2d 1000, ¶ 14. The parties rely on this general rule to support their claim that the *Key Trust* declaratory judgment barred all claims that could have been, but were not litigated in those cases.

{¶ 37} Unlike other judgments, however, "a declaratory judgment determines only what it actually decides and does not preclude other claims that might have

been advanced." *Shemo,* 95 Ohio St.3d at 69, 765 N.E.2d 345; 1 Restatement of the Law 2d, Judgments (1982) 337, Section 33, Comment *c.* Consequently, "[f]or a previous declaratory judgment, res judicata precludes only claims that were *actually decided.*" (Emphasis sic.) *State ex rel. Trafalgar Corp. v. Miami Cty. Bd. of Commrs.,* 104 Ohio St.3d 350, 2004-Ohio-6406, 819 N.E.2d 1040, ¶ 22.

{¶ 38} The board of park commissioners asserts that the trial court in the first *Key Trust* judgment decided that the lease covered the entire three-mile canal corridor from Milan to the area near Lock No. 1 and Mason Road and that res judicata bars relators from now contesting this conclusion. The board relies on the following language from the common pleas court's first judgment entry:

{¶ 39} "Therefore, the Leased Property extends from the southern terminus of the old Milan Canal at or near the southerly end of the Milan Canal basin in the Village of Milan to its northerly terminus at the Huron River at the former location of Lock No. 1 on premises now owned by Wikel Farms Ltd. immediately north of Mason Road in Section 2, Milan Township, Erie County."

{¶ 40} But as relators persuasively contend, the board takes this sentence out of context and ignores the trial court and court of appeals judgments in *Key Trust* that followed the original judgment.

{¶ 41} The entire paragraph from which the quoted sentence appears emphasizes that the leased property consists solely of the Merry and Townsend tracts:

{¶ 42} "The description of the Leased Property in the Lease unambiguously describes it as consisting of all lands *then owned by the Milan Canal Company* within a 150 foot wide corridor from approximately the intersection of Maine and Union Streets in the Village of Milan northerly to the north of the mouth of the Huron River. *The only lands owned by the Milan Canal Company at the time the Lease was executed lay within the boundaries of the Kneeland Townsend property and the Ebeneser Merry property, neither of which lay north of Lock No. 1.* Therefore, the Leased Property extends from the southern terminus of the old Milan Canal at or near the southerly end of the Milan Canal basin in the Village of Milan to its northerly terminus at the Huron River at the former location of Lock No. 1 on premises now owned by Wikel Farms Ltd. immediately north of Mason Road in Section 2, Milan Township, Erie County." (Emphasis added.)

{¶ 43} Evidently, most of the relators were concerned enough about the inclusion of the last sentence in the common pleas court's judgment and comparable language in that court's judgment on remand to assert on appeal that the trial court had improperly reformed the railroad lease by expanding the leased property beyond the Merry and Townsend tracts. On each occasion, however, the court of appeals emphasized that any boundary reference contained in the trial court's judgments—like the reference to a 150–foot–wide canal corridor—

was merely a general description that was subject to the specific holding that the leased property consisted of only the Merry and Townsend tracts.

{¶ 44} For example, in the first *Key Trust* appeal, the court of appeals rejected the arguments challenging the property description by holding that the actual metes and bounds were those of the Merry and Townsend properties:

{¶ 45} "Although the metes and bounds description contained in the 1881 lease describes a one-hundred-fifty-foot corridor for the full length of the canal, the lease limits the conveyance to property 'owned by' the canal company. The trial record shows that the Milan Canal Company acquired property only from Townsend and Merry. The trial court ruled that this property alone was the subject of the lease. Consequently, the court never modified the 1881 lease. Since there was no reformation of the lease, appellants' arguments concerning an improper reformation of the contract are without merit. * * *

{¶ 46} "The same holds true for [the property owners'] manifest-weight argument * * *. The only competent, credible evidence presented at trial was that the canal company obtained property solely from Townsend and Merry. On such evidence, we cannot say that the trial court's decision to limit the lease to such property was unsupported by the evidence." *Erie Metroparks*, 145 Ohio App.3d at 787–788, 764 N.E.2d 509.

{¶ 47} Similarly, in the second appeal, the court of appeals rejected relators' claim that the trial court's lease-property description on remand exceeded the boundaries of the Merry and Townsend parcels by deeming it significant that both trial court entries emphasized that the leased property encompassed only land obtained from Townsend and Merry. *Erie Metroparks*, 2002-Ohio-4827, 2002 WL 31054032, at ¶ 19, 22.

{¶ 48} Under these circumstances, the *Key Trust* litigation conclusively determined that the property subject to the board's interests under the railroad lease lay within the boundaries of the Merry and Townsend parcels; it did not determine—as the board contends—that those boundaries extended beyond those parcels. Res judicata is "not a shield to protect the blameworthy." *Davis v. Wal–Mart Stores, Inc.* (2001), 93 Ohio St.3d 488, 491, 756 N.E.2d 657. A contrary ruling would condone the board's hypertechnical reading of the trial court's entry language in *Key Trust* and ignore both the ultimate emphasis in that litigation at both the trial and appellate courts on the interests of the board being limited to the Merry and Townsend parcels as well as the uncontroverted evidence that none of relators' property is within either of those parcels.

{¶ 49} Therefore, relators have established that the board's construction and use of a recreational trail over their property south of Mason Road resulted in a physical invasion of their property and constitute an involuntary taking entitling them to the requested appropriation proceeding.

Mandamus to Compel Appropriation Proceeding for Property
North of Mason Road: Res Judicata Effect of the
Coleses' Prior Declaratory–Judgment Action

{¶ 50} For the portions of relators' property that lie north of Mason Road, the board claims that the common pleas court's 1998 dismissal of the Coleses' declaratory-judgment action prevented the Coleses from relitigating their claimed ownership of the property. The dismissal, which preceded the *Key Trust* litigation, was based on the court's holding that the Coleses were not real parties in interest.

{¶ 51} The board's claim lacks merit. In general, the dismissal of an action because one of the parties is not a real party in interest or does not have standing is not a dismissal on the merits for purposes of res judicata. See, e.g., *Stewart v. K & S Co., Inc.* (Utah 1979), 591 P.2d 433, 434 ("the dismissal of an action because one of the parties is not the real party in interest is not a dismissal on the merits so as to bar a subsequent action"); 18A Wright, Miller & Cooper, Federal Practice and Procedure (2002) 189, Section 4438 ("Dismissal on the ground that the plaintiff is not the real party in interest should not preclude a later action by the real party in interest"); *A–1 Nursing Care of Cleveland, Inc. v. Florence Nightingale Nursing, Inc.* (1994), 97 Ohio App.3d 623, 627, 647 N.E.2d 222 (dismissal for lack of standing "terminates the action other than on the merits and affords proper parties the opportunity to refile without fear of the effects of *res judicata* "); *Asher v. Cincinnati* (Dec. 23, 1999), Hamilton App. No. C–990345, 2000 WL 955617 (dismissal for lack of standing is not on the merits for purposes of res judicata).

{¶ 52} Moreover, despite the somewhat contradictory nature of the evidence, the description of the parcel of land that is referred to in relators' complaint as the Coleses' home parcel, which is located north of Mason Road, corresponds to the deed description of the property conveyed by Key Trust to the Coleses in 1999, which was *after* the 1998 dismissal that the board cites in support of its res judicata claim. Res judicata does not preclude a party previously dismissed for lack of standing as a real party in interest from becoming a real party in interest through transactions occurring after the dismissal. *Wead v. Lutz,* 161 Ohio App.3d 580, 2005-Ohio-2921, 831 N.E.2d 482, ¶ 35–37.

{¶ 53} Therefore, the dismissal of the Coleses' previous declaratory-judgment action does not prevent their mandamus claim.

Mandamus to Compel Appropriation Proceeding for Property North of
Mason Road: Res Judicata Effect of the *Key Trust* Litigation

{¶ 54} Relators, the Coleses and the Otrusina estate, assert that for their property north of Mason Road, the *Key Trust* litigation prevents the board from attempting to relitigate their claimed ownership of the property.

{¶ 55} Although the focus of the *Key Trust* cases was on the leased property, the board raised, and the court considered, whether the board owned any of the pertinent canal corridor property in fee in addition to its interests under the railroad lease. In its reply to the counterclaim filed in *Key Trust,* the board expressly claimed that it had a right to possess the land formerly used by the railroad through property it acquired by a quitclaim deed from a successor to the lessee, instead of simply through the lease itself. In the trial court's first judgment, the court specifically noted that one of the issues before it was whether the board of park commissioners had "acquired any ownership interest in the property at issue by virtue of a quitclaim deed from the Wheeling Railroad." The court ultimately resolved this issue in favor of the defendants, including relators, by holding that the board had no property interest in the land north of Lock No. 1. That judgment was not modified by the subsequent *Key Trust* proceedings.

{¶ 56} The board does not really dispute this; instead, it claims that the dismissal of the Coleses' earlier case preceded the *Key Trust* cases and thus barred the Coleses' claim to the property. But as previously discussed, that claim lacks merit.

{¶ 57} Even if the *Key Trust* cases did not resolve the board's alleged ownership in this northern portion of the property, and assuming, as the board claims, that its ownership derives from an 1882 deed from Oscar Meeker to Wheeling & Lake Erie Rail Road Company, the board's predecessor in interest, the deed itself did not transfer any property rights to the railroad company because Oscar Meeker did not hold title to the property when it was allegedly conveyed. Although relators raised Meeker's inability to pass title in their initial merit brief, the board did not rebut relators' argument.

{¶ 58} Therefore, in regard to the portion of relators' property north of Mason Road, the board's construction and use of a recreational trail also effected an involuntary taking.

Conclusion

{¶ 59} Relators have established that by employing their private property for public use as a recreational trail, the board of park commissioners has taken their property. Accordingly, we grant a writ of mandamus to compel the board to commence an appropriation proceeding to compensate them for that taking. All other issues raised by the parties—the proper construction of the Meeker deed, the possible abandonment of any railroad easement, and whether the recreational trail constituted a significantly different use than the railroad so as to require compensation—need not be addressed because they are rendered moot by our

decision. See, e.g., *State ex rel. Essig v. Blackwell*, 103 Ohio St.3d 481, 2004-Ohio-5586, 817 N.E.2d 5, ¶ 33.

Writ granted.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, LANZINGER, and CUPP, JJ., concur.

O'DONNELL, J., not participating.

---

Brooks & Logan Co., L.P.A., and J. Anthony Logan; Ackerson, Kauffman Fex, P.C., and Nels J. Ackerson, for relators.

Tomino & Latchney, L.L.C., and John D. Latchney, for respondents.